**FILED**

NOV 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF

COLUMBIA

| | | |
|---|---|---|
| OZIEL MARTINEZ | * | Case: 1:07-cv-02141 |
|     Petitioner, | * | Assigned To : Huvelle, Ellen S. |
| | * | Assign. Date : 11/21/2007 |
| vs. | * | Description: Habeas Corpus-2255 |
| | * | |
| ATTORNEY GENERAL FOR THE | * | ADMINISTRATIVE |
| "UNITED STATES", | * | |
| and | * |     AND |
| | * | |
| HARLEY G. LAPPIN, Dir., | * | QUASI–JUDICIAL |
| FEDERAL BUREAU OF PRISONS, | * | |
|     Respondent(s). | * | NOTICE |
| | * | |

_____

**BEFORE THIS HONORABLE COURT:**

COMES NOW, Oziel Martinez,  the Petitioner, and submits this Administrative and Judicial Notice, to appraise the court of the following, by and through said notice:

1.

Subsection 2255, of **Title 28, of the United States Code,** is inapplicable and without force or effect of law where it is shown not to have been enacted by Congress, into Federal Law. The Congressional Record, Vol. 94–Part 7 (June 15, 1948 to June 19, 1948) pp. 8229–9169, and Vol. 94–Part 8 (July 26, 1948 to December 31, 1948) pp. 9353, to reveal that Congress was not assembled in session on the date(s) that Title 3, 8, 18, 21, and 48 are purported to have been enacted into law by Congress.

2.

The United States District Court, wherein the cause herein complained of arose, is shown to be an Executive Tribunal without Article III judicial authority. This assertion is supported by consulting Supreme Court Rule 45, The Revised Statutes of 1878, The Judiciary Act of March 3, 1911, Executive Order 6166, **Balzac v. Porto Rico,** (1922), **Mookine v. United States,** (1938). Thus, not authorized to entertain the cause now before the court.

3.

Thus, the Court, in similar matters (Common Law Writ of Habeas Corpus), appears to be resorting to inapplicable statutory provisions to remove the cause to a court which the court knows lacks the authority under Article III to entertain the matter. Thereby the sustainment of the unlawful convictions and term of imprisonment **via** subterfuge and non-compliance with the law (a Malum In Se Crime?) whereby the Accused/Petitioner is deprived of due process of law and continues to be obstructed to a remedy in law to redress a grievance.

4.

It is for the foregoing, and following reasons that the Petitioner has brought this instant cause under the common law, Writ of Habeas Corpus, and invoked the venue and jurisdiction of an Article III, Constitutional Court.

5.

It is therefore incumbent upon this Court, in the interest of justice, by and through this Judicial Notice, as a neutral party between both Petitioner and Respondent(s), upon it's own motion to issue an **ORDER TO SHOW CAUSE** to the Respondent(s) why the **Writ of Habeas Corpus** should not issue, in their 'showing' based upon the facts and points raised in the Memorandum in support of the Writ of Habeas Corpus.

Dated this 19 day of Nov. , 2007.

Respectfully Submitted
by;

*Oziel Martinez*

Oziel Martinez, Petitioner - Pro se.

CertMail No. 7005 1160 0000 4617 7591

**2 of 2 ADMINISTRATIVE AND QUASI–JUDICIAL NOTICE via SHOW CAUSE ORDER**

# EXHIBIT

# A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*JUDGE MORAN*

MAGISTRATE JUDGE SIDNEY I. SCHENKIER

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **Superseding Indictment** |
| | ) | |
| v. | ) | **No. 04 CR 937** |
| | ) | |
| OZIEL MARTINEZ, | ) | Violation: Title 21, United States Code, |
| ANDRES MACIAS, | ) | Sections 841(a)(1) and 846; Title 18, United |
| SANTOS FLORES, | ) | States Code, Section 2 |
| ADAN MARTINEZ, and | ) | |
| RAMIRO ANGUIANO | ) | |

*FILED*
*AUG - 4 2005*

**COUNT ONE**

The SPECIAL MAY 2004 GRAND JURY charges:

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

1.     Between approximately early September 2004 and continuing until on or about October

25, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OZIEL MARTINEZ,
ADAN MARTINEZ a/k/a Adam Martinez,
ANDRES MACIAS,
RAMIRO ANGUIANO, and
SANTOS FLORES,

defendants herein, knowingly and intentionally conspired with each other, with another individual known

to the grand jury and identified herein as Conspirator A, and with others known and unknown to the grand

jury, to possess with intent to distribute controlled substances, namely mixtures containing in excess of five

kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance, and mixtures containing in excess

of 100 kilograms of marijuana, in violation of Title 21, United States Code, Section 841(a)(1).

2.     It was part of the conspiracy that the defendants were involved in a scheme to transport

kilogram quantities of cocaine and marijuana from the McAllen, Texas area to, among other places, the

Chicago, Illinois area. OZIEL MARTINEZ and his brother ADAN MARTINEZ supervised the shipments

of these drugs by, among others things, acquiring the drugs from suppliers located in the Mexico/Texas

border area, arranging for the drugs to be loaded into semi-trailer tractors that were often outfitted with

false compartments into which the drugs were placed, hiring drivers to drive the semi-trailer tractors from

Texas to the Chicago area, arranging for the delivery of the semi-trailer tractors to a warehouse in Chicago,

helping unload the drugs from the trailers once they arrived in Chicago, and arranging for the retrieval and

distribution of the drugs in the Chicago area by others.

3.      It was further part of the conspiracy that sometime during September 2004, OZIEL

MARTINEZ notified ANDRES MACIAS, who operated a warehouse in Chicago, about two separate

shipments of drugs (one of cocaine and one of marijuana) that were to be driven to Chicago from Texas

and unloaded at MACIAS'S warehouse. On or about September 27, 2004, ADAN MARTINEZ arrived

in Chicago to supervise the unloading of these shipments of drugs.

4.      It was further part of the conspiracy that OZIEL MARTINEZ and ADAN MARTINEZ

recruited Conspirator A to drive a semi-trailer tractor, which had been outfitted with a secret compartment

into which multiple kilograms of cocaine had been placed, from Texas to MACIAS'S warehouse. On or

about September 26, 2004, Conspirator A obtained the cocaine from, among others, ADAN MARTINEZ

and OZIEL MARTINES, and proceeded to transport it to Chicago as directed by ADAN MARTINEZ

and OZIEL MARTINEZ. On or about September 28, 2004, Conspirator A arrived at MACIAS'S

warehouse and the cocaine from the semi-trailer was unloaded by ADAN MARTINEZ, MACIAS, and

SANTOS FLORES, whom MACIAS had hired to help unload the drugs.

2

5.      It was further part of the conspiracy that OZIEL MARTINEZ and ADAN MARTINEZ recruited RAMIRO ANGUIANO to drive a semi-trailer tractor into which multiple kilograms of marijuana had been loaded from Texas to MACIAS'S warehouse. On or about September 29, 2004, while enroute to Chicago with the semi-trailer tractor, ANGUIANO was arrested by local law enforcement and the semi-trailer tractor was detained. After ADAN MARTINEZ and the other defendants learned of ANGUIANO's arrest, ADAN MARTINEZ left Chicago and returned to Texas.

6.      It was further part of the conspiracy that sometime during October 2004, OZIEL MARTINEZ notified MACIAS that another shipment of multiple kilograms of cocaine was to be driven to his warehouse. On or about October 22, 2004, OZIEL MARTINEZ and ADAN MARTINEZ directed Conspirator A to drive a semi-trailer tractor, which had been outfitted with a secret compartment into which multiple kilograms of cocaine had been placed, from Texas to MACIAS'S warehouse.

7.      It was further part of the conspiracy that on or about October 24, 2004, OZIEL MARTINEZ arrived in Chicago to supervise the unloading of the shipment of cocaine being driven to MACIAS'S warehouse by Conspirator A. On or about October 25, 2004, OZIEL MARTINEZ, MACIAS, and FLORES, whom MACIAS had again hired to help unload drugs from the semi-trailer, went to the warehouse to await the arrival of the semi-trailer tractor being driven by Conspirator A.

3

8.     It was further part of the conspiracy that the defendants misrepresented, concealed and hid, and caused to be misrepresented, concealed, and hidden, the acts and the purpose of the acts done in furtherance of the conspiracy, and used means to avoid detection and apprehension by law enforcement authorities and to otherwise provide security to the members of the conspiracy;

In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

4

## COUNT TWO

The SPECIAL MAY 2004 GRAND JURY further charges:

On or about September 28, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ADAN MARTINEZ,
ANDRES MACIAS, and
SANTOS FLORES

defendants herein, knowingly and intentionally possessed with intent to distribute a controlled substance, namely, mixtures containing in excess of five kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT THREE

The SPECIAL MAY 2004 GRAND JURY further charges:

On or about October 25, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OZIEL MARTINEZ,
ANDRES MACIAS, and
SANTOS FLORES

defendants herein, knowingly and intentionally attempted to possess with intent to distribute a controlled substance, namely, mixtures containing in excess of five kilograms of cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1);

In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

6

SRI

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

| NORTHERN | District of | ILLINOIS |

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| V. | |
| OZIEL MARTINEZ | |

|  | Case Number: | 04 CR 937-1 |
|  | USM Number: | 21722-424 |

NISHAY KUMAR SANAN
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s)    one and three of the superseding indictment

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. 846 | Conspiracy to possess with the intent to deliver a controlled substance | 10/25/2004 | 1 & 3 |

The defendant is sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s)    Any remaining counts    ☐ is    X are    dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

NOVEMBER 17, 2006
Date of Imposition of Judgment

*James B. Moran*
Signature of Judge

JAMES B. MORAN, U.S. DISTRICT JUDGE
Name and Title of Judge

NOVEMBER 20, 2006
Date

DATE: NOV 2 1 2006

AO 245B    (Rev. 12/03) Judgment in Criminal Case
             Sheet 2 — Imprisonment

DEFENDANT:          OZIEL MARTINEZ                          Judgment — Page    2    of    5
CASE NUMBER:        04 CR 937-1

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

210 months on counts one and three of the superseding indictment.

X    The court makes the following recommendations to the Bureau of Prisons:
     It is recommended that the defendant participate in the Comprehensive Drug Treatment Program. Also, it is recommended that the defendant be placed as close to Edinburg , Texas, as possible.

X    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

     ☐    at    _____    ☐  a.m.    ☐  p.m.    on    _____ .

     ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐    before 2 p.m. on    _____ .

     ☐    as notified by the United States Marshal.

     ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on    _____    to    _____

a _____ , with a certified copy of this judgment.

                                                    _____
                                                    UNITED STATES MARSHAL

                                        By    _____
                                                    DEPUTY UNITED STATES MARSHAL

AO 245B   (Rev. 12/03) Judgment in a Criminal Case
Sheet 3 — Supervised Release

| | | Judgment—Page __3__ of __5__ |
|---|---|---|

DEFENDANT:   OZIEL MARTINEZ
CASE NUMBER:   04 CR 937-1

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

5 years on counts one and three of the superseding indictment. The defendant shall participate in a drug aftercare treatment program which may include urine testing at the direction of the probation officer.

    The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X  The defendant shall not possess a firearm, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐  The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐  The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐  The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

    If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

    The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  the defendant shall support his or her dependents and meet other family responsibilities;

5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B     (Rev. 12/03) Judgment in a Criminal Case
            Sheet 5 — Criminal Monetary Penalties

| | | Judgment — Page ___4___ of ___5___ |
|---|---|---|
| DEFENDANT: | OZIEL MARTINEZ | |
| CASE NUMBER: | 04 CR 937-1 | |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | **$** 200.00 | **$** | **$** |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

  If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | **$** _____ | **$** _____ | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

  ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

DEFENDANT:        OZIEL MARTINEZ
CASE NUMBER:      04 CR 937-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

A    X    Lump sum payment of $    200.00    due immediately, balance due

    ☐    not later than _____ , or
    ☐    in accordance    ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B    ☐    Payment to begin immediately (may be combined with   ☐C,   ☐ D, or   ☐ F below); or

C    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    ☐    Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# EXHIBIT
# B

**1 USCS § 204**

bia. Act Dec. 27, 1967, P. L. 90-226, Title X, §§ 1001–1009, 81 Stat. 724, which provided for the creation and operation of a commission to study and make recommendations with reference to a revised code of criminal law and procedure for the District of Columbia, was repealed by Act July 29, 1970, P. L. 91-358, Title VI, § 601, 84 Stat. 667; Dec. 7, 1970, P. L. 91-530, § 2(b)(1), 84 Stat. 1390.

### CROSS REFERENCES

Council of the District of Columbia, 2 USCS § 285b.

Office of the Law Revision Counsel, 2 USCS § 285b.

This section is referred to in 1 USCS §§ 201, 205, 208, 209, 210, 211, 213.

## § 204. Codes and Supplements as evidence of the Laws of United States and District of Columbia; citation of Codes and Supplements

In all courts, tribunals, and public offices of the United States, at home or abroad, of the District of Columbia, and of each State, Territory, or insular possession of the United States—

**(a) United States Code.** The matter set forth in the edition of the Code of Laws of the United States current at any time shall, together with the then current supplement, if any, establish prima facie the laws of the United States, general and permanent in their nature, in force on the day preceding the commencement of the session following the last session the legislation of which is included: Provided, however, That whenever titles of such Code shall have been enacted into positive law the text thereof shall be legal evidence of the laws therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.

**(b) District of Columbia Code.** The matter set forth in the edition of the Code of the District of Columbia current at any time shall, together with the then current supplement, if any, establish prima facie the laws, general and permanent in their nature, relating to or in force in the District of Columbia on the day preceding the commencement of the session following the last session the legislation of which is included, except such laws as are of application in the District of Columbia by reason of being laws of the United States general and permanent in their nature.

**(c) District of Columbia Code; citation.** The Code of the District of Columbia may be cited as "D. C. Code."

**(d) Supplements to Codes; citation.** Supplements to the Code of Laws of the United States and to the Code of the District of Columbia may be cited, respectively, as "U. S. C., Sup. ," and "D. C. Code, Sup. ," the blank in each case being filled with Roman figures denoting the number of the supplement.

**(e) New edition of Codes; citation.** New editions of each of such codes may be cited, respectively, as "U. S. C., ed.," and "D. C. Code, ed.," the blank in each case being filled with figures denoting the last year the legislation of which is included in whole or in part.

(July 30, 1947, ch 388, § 1, 61 Stat. 638.)

*07 2141*

**FILED**

NOV 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# PARALLEL TABLE OF AUTHORITIES AND RULES

The following table lists rulemaking authority (except 5 U.S.C. 301) for regulations codified in the *Code of Federal Regulations*. Also included are statutory citations which are noted as being interpreted or applied by those regulations.

The table is divided into four segments: United States Code citations, United States Statutes at Large citations, public law citations, and Presidential document citations. Within each segment the citations are arranged in numerical order:

For the United States Code, by title and section;

For the United States Statutes at Large, by volume and page number;

For public laws, by number; and

For Presidential documents (Proclamations, Executive orders, and Reorganization plans), by document number.

Entries in the table are taken directly from the rulemaking authority citation provided by Federal agencies in their regulations. Federal agencies are responsible for keeping these citations current and accurate. Because Federal agencies sometimes present these citations in an inconsistent manner, the table cannot be considered all-inclusive.

The portion of the table listing the United States Code citations is the most comprehensive, as these citations are entered into the table whenever they are given in the authority citations provided by the agencies. United States Statutes at Large and public law citations are carried in the table only when there are no corresponding United States Code citations given.

This table is revised as of January 1, 2003.

## CFR Index

| 16 U.S.C.—Continued | CFR |
|---|---|
| 704 | 50 Parts 12—14 |
| 706—707 | 50 Part 12 |
| 712 | 50 Parts 12, 13, 14, 21 |
| 715i | 43 Part 5 |
| | 50 Parts 25, 27—32 |
| 715s | 43 Part 17 |
| | 50 Parts 27, 34, 37 |
| 718 | 50 Part 31 |
| 718f—718g | 50 Part 12 |
| 718j | 50 Part 91 |
| 725 | 43 Part 21 |
| | 50 Parts 27—31 |
| 742 et seq | 50 Part 36 |
| 742 | 50 Parts 38, 251 |
| 742a et seq | 50 Part 222 |
| 742a—742j-1 | 50 Parts 10, 19 |
| 742a—742j | 50 Part 20 |
| 742e | 50 Part 260 |
| 742j-1 | 50 Parts 12, 13 |
| 742l | 50 Part 12 |
| 745 | 17 Part 274 |
| 753a | 43 Part 17 |
| 757a—757f | 43 Part 17 |
| | 50 Part 401 |
| 760c | 33 Part 209 |
| 760d | 43 Part 17 |
| 760g | 33 Part 209 |
| 773 et seq | 50 Parts 300, 679 |
| 773—773k | 15 Part 904 |
| 777 | 43 Part 17 |
| 777g | 50 Parts 85, 86 |
| 777g-1 | 50 Part 86 |
| 777i | 50 Part 80 |
| 779e | 29 Parts 1, 5 |
| 781 et seq | 15 Part 904 |
| 791 et seq | 10 Part 205 |
| 791—828c | 18 Part 381 |
| 791—825r | 18 Parts 37, 375, 385, 390 |
| 791—823 | 33 Part 221 |
| 791 | 33 Parts 208, 222 |
| 791a—828c | 18 Parts 3, 141, 154, 290 |
| 791a—825r | 18 Parts 2, 4, 8, 11, 16, 24, 32—36, 41, 45, 101, 131, 292, 294, 382, 385, 390 |
| 792 et seq | 10 Part 205 |
| | 18 Parts 1b, 154 |
| 792—828c | 18 Parts 12, 46, 225, 260, 294 |
| 792—825y | 18 Part 2 |
| 796 | 18 Part 20 |
| 797 | 33 Part 209 |
| 799 | 18 Part 6 |
| 801 | 18 Part 9 |
| 803 | 18 Part 6 |
| 806 | 18 Part 6 |
| 812—813 | 18 Part 20 |
| 818 | 18 Part 25 |
| | 43 Part 2300 |
| 825 | 18 Parts 3c, 125 |
| 825c | 18 Part 125 |
| 825c | 18 Part 41 |
| 825g—825h | 18 Parts 6, 25 |
| 825h | 18 Parts 3a, 3b, 9, 125, 154 |
| 825k | 18 Part 20 |
| 825s | 7 Part 15 |
| | 10 Part 903 |
| | 18 Part 300 |

| 16 U.S.C.—Continued | CFR |
|---|---|
| 831—831dd | 5 Part 7901 |
| | 18 Parts 1300—1311, 1313—1314 |
| 831—831ee | 18 Part 1315 |
| 832—832l | 18 Part 300 |
| 835c note | 43 Part 17 |
| 835c-1 | 43 Part 17 |
| 835c-4 | 43 Part 413 |
| 838—838k | 18 Part 300 |
| 839—839h | 18 Parts 300, 301 |
| 852 | 50 Part 14 |
| 852d—853 | 50 Part 12 |
| 916 et seq | 50 Part 230 |
| 916—916l | 15 Part 904 |
| 916a—1 | 50 Part 230 |
| 921 | 43 Part 17 |
| 951—961 | 15 Part 904 |
| | 50 Part 300 |
| 971 et seq | 50 Parts 285, 300, 630 |
| 971—971l | 15 Part 904 |
| 972—972h | 15 Part 904 |
| 973—973r | 50 Part 300 |
| 1001 et seq | 7 Part 622 |
| 1001—1008 | 7 Parts 15, 601, 650, 654 |
| 1005...7 Parts 1775, 1777, 1778—1780, 1781, 1930, 1942 |  |
| 1006 | 7 Part 621 |
| 1009 | 7 Part 621 |
| 1021—1032 | 15 Part 904 |
| 1131 et seq | 36 Part 9 |
| | 43 Part 6300 |
| 1131—1136 | 36 Part 293 |
| | 43 Parts 19, 3800 |
| | 50 Part 35 |
| 1131 | 36 Part 294 |
| 1133 | 36 Part 261 |
| 1134 | 36 Part 251 |
| 1151—1175 | 15 Part 904 |
| 1191—1204 | 16 Part 1610 |
| 1201—1205 | 43 Part 17 |
| 1241 et seq | 43 Parts 8340, 8360, 8370 |
| 1241—1249 | 43 Parts 8370, 9260 |
| 1241 | 43 Part 8350 |
| 1246 | 36 Part 261 |
| | 43 Part 9260 |
| 1247 | 49 Part 1152 |
| 1248 | 49 Part 1152 |
| 1271—1287 | 43 Parts 3800, 8370 |
| 1271 | 43 Part 8350 |
| 1278 | 36 Part 297 |
| 1280 | 43 Part 3809 |
| 1281 | 36 Parts 292, 297 |
| | 43 Part 8350 |
| 1281c | 43 Parts 8340, 8360 |
| 1301—1311 | 7 Part 752 |
| 1317 | 50 Part 216 |
| 1331—1340 | 36 Part 261 |
| | 43 Part 4700 |
| 1338 | 43 Part 9260 |
| 1361 et seq | 50 Parts 18, 216, 222—224, 228, 229, 230, 403 |
| 1361—1407 | 15 Part 904 |
| | 50 Parts 17, 82, 216 |
| 1361—1384 | 50 Part 10 |
| 1361 | 36 Part 13 |
| 1371 | 50 Part 17 |
| 1372 | 50 Part 17 |

## Authorities

| 16 U.S.C.—Continued | CFR |
|---|---|
| 1374 | 50 Part 17 |
| 1375 | 50 Part 17 |
| 1375 et seq | 50 Part 10 |
| 1375—1377 | 50 Part 12 |
| 1382 | 50 Parts 11—14, 17 |
| 1401—1407 | 50 Part 10 |
| 1431 et seq | 15 Part 922 |
| 1431—1439 | 15 Part 904 |
| 1431—1434 | 15 Part 929 |
| 1435—1439 | 15 Part 904 |
| 1451 et seq | 15 Parts 923, 930 |
| 1451 | 49 Part 1105 |
| 1456 | 33 Part 209 |
|  | 49 Part 365 |
| 1461 | 15 Part 921 |
| 1501—1510 | 7 Part 701 |
| 1531 et seq | 7 Part 650 |
|  | 30 Part 773 |
|  | 32 Part 190 |
|  | 43 Part 8340 |
|  | 50 Parts 23, 222, 223, 230, 402, 424, |
|  | 450—453 |
| 1531—1544 | 50 Parts 17, 22 |
| 1531—1543 | 15 Part 904 |
|  | 32 Part 552 |
|  | 50 Parts 10, 23, 81, 223, 224 |
| 1531 | 36 Part 13 |
|  | 49 Part 1105 |
| 1532 | 7 Part 355 |
| 1533 | 50 Parts 17, 226 |
| 1538—1540 | 50 Part 17 |
| 1538 | 7 Part 355 |
|  | 50 Parts 14, 17, 24 |
| 1540 | 7 Parts 1, 355, 356, 380 |
|  | 50 Parts 11, 12, 14, 17, 24 |
| 1561 et seq | 50 Part 227 |
| 1603 | 36 Part 200 |
| 1604 | 36 Part 219 |
| 1606 | 7 Part 701 |
| 1608—1610 | 23 Part 660 |
| 1608 | 36 Part 294 |
| 1612 | 36 Part 216 |
| 1612 note | 36 Part 215 |
| 1613 | 36 Parts 219, 294 |
| 1704 | 43 Part 26 |
| 1801 et seq | 50 Parts 268, 300, 600, 622, 630, |
|  | 640, 644, 648, 654, 660, 674, 678, 679 |
| 1801—1882 | 15 Part 904 |
| 1851 note | 15 Part 904 |
|  | 50 Part 697 |
| 1853 | 15 Part 905 |
|  | 50 Part 605 |
| 1861a | 50 Part 600 |
| 1901 et seq | 36 Part 9 |
| 1901—1912 | 43 Part 3830 |
| 1901 | 43 Parts 3800, 3830 |
| 1907 | 43 Part 3830 |
| 1908 | 36 Part 62 |
| 2001—2645 | 18 Part 290 |
| 2001—2009 | 7 Part 601 |
| 2005b | 7 Part 610 |
| 2101 et seq | 36 Part 200 |
| 2101—2111 | 7 Part 701 |
| 2103b | 36 Part 230 |
| 2105 | 36 Part 230 |
| 2114 | 36 Part 230 |

| 16 U.S.C.—Continued | CFR |
|---|---|
| 2201—2205 | 7 Part 701 |
| 2203—2205 | 7 Part 601 |
| 2203 | 7 Part 624 |
| 2203 | 16 Part 455 |
| 2309 | 7 Part 455 |
| 2401 et seq | 45 Parts 672—673 |
|  | 40 Part 8 |
| 2401—2412 | 15 Part 904 |
|  | 45 Part 670 |
| 2401 | 45 Part 670 |
| 2403a | 40 Part 8 |
| 2405 | 45 Part 671 |
| 2431 et seq | 50 Part 300 |
| 2431—2444 | 15 Part 904 |
| 2501—2514 | 36 Part 72 |
| 2601—2645 | 18 Parts 2—4, 32—35, 37, 41, 45, |
|  | 46, 101, 131, 141, 154, 281, 286, 290, |
|  | 292, 375, 381, 382, 385, 390 |
| 2901 | 50 Part 83 |
| 3101 et seq | 36 Parts 9, 13 |
|  | 43 Parts 36, 3000, 3110, 3120 |
|  | 50 Part 36 |
| 3101—3126 | 36 Part 242 |
|  | 50 Part 100 |
| 3124 | 43 Part 2090 |
| 3142 | 50 Part 37 |
| 3150 | 43 Parts 3100, 3150 |
| 3170 | 36 Part 251 |
| 3197 | 36 Part 13 |
| 3210 | 36 Part 251 |
| 3371 et seq | 50 Parts 10—12, 14 |
| 3371—3378 | 15 Part 904 |
|  | 50 Parts 10, 14, 300 |
| 3372 | 25 Part 244 |
| 3373 | 7 Parts 1, 380 |
| 3374 | 7 Part 356 |
|  | 50 Part 13 |
| 3601—3608 | 15 Part 904 |
| 3631 et seq | 50 Part 679 |
| 3631—3644 | 15 Part 904 |
| 3636 | 50 Part 300 |
| 3801 et seq | 7 Parts 12, 601 |
| 3837 et seq | 7 Part 1467 |
| 3837—3837f | 7 Part 623 |
| 3839aa—3839aa—8 | 7 Part 1466 |
| 3839bb | 7 Part 1468 |
| 3839bb-1 | 7 Part 636 |
| 3841—3844 | 7 Part 12 |
| 3842 | 7 Part 652 |
| 3843 | 7 Part 614 |
| 3861 | 7 Part 610 |
| 3862 | 7 Part 610 |
| 3901 et seq | 50 Parts 25, 38 |
| 3951—3956 | 50 Part 84 |
| 4101 et seq | 50 Part 253 |
| 4201—4245 | 50 Part 17 |
| 4223—4244 | 50 Part 14 |
| 4301—4309 | 36 Part 290 |
|  | 43 Part 37 |
| 4601—6a | 36 Part 291 |
| 4901—4916 | 50 Parts 13—15 |
| 5101 et seq | 50 Part 697 |
| 5501 et seq | 50 Part 300 |

| 17 U.S.C. | |
|---|---|
| 101 | 19 Part 133 |
| 111 | 37 Parts 801, 803 |
| 112 | 37 Part 261 |

**CFR Index**

| 17 U.S.C.—Continued | CFR |
|---|---|
| 114 | 37 Parts 260, 261 |
| 116 | 37 Part 254 |
| 118 | 37 Part 253 |
| 119 | 37 Parts 257, 258 |
| 408 | 37 Part 202 |
| 411 | 37 Part 205 |
| 509 | 28 Part 9 |
| 601—603 | 19 Part 133 |
| 702 | 37 Parts 201—205, 211, 256, 310 |
| 801—803 | 37 Part 251 |
| 801 | 37 Parts 252—255, 260, 261, 304 |
| 802 | 37 Parts 256, 310 |
| 803 | 37 Parts 252, 253, 255 |
| 804 | 37 Part 306 |
| 908 | 37 Part 211 |
| 1007 | 37 Part 259 |

| 18 U.S.C. | |
|---|---|
| 13 | 32 Parts 210, 263, 1290 |
| | 39 Part 232 |
| 42—44 | 50 Part 11 |
| 42 | 50 Parts 10, 13, 14, 16 |
| 47 | 43 Part 4700 |
| 109 | 21 Part 41 |
| 201—212 | 24 Part 0 |
| 201—209 | 12 Part 511 |
| | 29 Part 2202 |
| 201 note | 20 Part 360 |
| 202 | 14 Part 300 |
| 203 | 31 Part 8 |
| 205 | 14 Part 300 |
| | 31 Part 8 |
| 207 | 5 Parts 1304, 2641 |
| | 7 Part 1 |
| | 11 Part 7 |
| | 12 Parts 400, 933, 2434, 2637 |
| | 14 Parts 300, 1207 |
| | 15 Part 0 |
| | 16 Part 1030 |
| | 17 Part 207 |
| | 19 Part 200 |
| | 22 Parts 18, 223, 525, 710, 713 |
| | 28 Part 45 |
| | 29 Part 0 |
| | 31 Part 15 |
| | 36 Part 905 |
| | 39 Part 956 |
| | 41 Part 105—735 |
| | 45 Parts 73b, 500 |
| | 46 Parts 500, 502 |
| | 49 Part 98 |
| 208 | 5 Part 2640 |
| | 10 Part 1010 |
| | 14 Part 1207 |
| | 15 Part 0 |
| | 16 Part 5 |
| | 18 Part 1301 |
| | 29 Parts 0 |
| | 34 Part 73 |
| | 45 Part 680 |
| | 46 Part 500 |
| 212 | 5 Part 3101 |
| 213 | 5 Part 3101 |
| 219 | 32 Part 516 |
| 223 | 28 Part 524 |
| 241 note | 24 Part 573 |
| 437 | 25 Part 140 |

| 18 U.S.C.—Continued | CFR |
|---|---|
| 474 | 31 Parts 402, 405 |
| 474A | 31 Part 601 |
| 492 | 31 Parts 101, 402, 403 |
| 506 | 36 Part 1200 |
| 512 | 28 Part 9 |
| 545 | 19 Parts 145, 161 |
| 546 | 19 Part 162 |
| 550 | 19 Part 191 |
| 641 | 12 Part 4 |
| | 22 Part 713 |
| | 43 Part 8200 |
| | 49 Part 801 |
| 701 | 20 Part 369 |
| | 32 Part 507 |
| | 50 Part 80 |
| 702 | 32 Part 507 |
| 707 | 7 Part 8 |
| 711 | 36 Part 271 |
| 751—752 | 28 Part 511 |
| 751 | 28 Part 570 |
| 798 | 32 Parts 322, 518 |
| 799 | 14 Parts 1203a, 1214 |
| 834 | 49 Part 178 |
| 847 | 27 Parts 55, 178 |
| 921—928 | 27 Part 178 |
| 921 | 27 Part 72 |
| 926 | 27 Part 71 |
| 951 | 28 Part 73 |
| 981 | 28 Part 9 |
| | 39 Part 233 |
| 982 | 28 Part 9 |
| 983 | 19 Part 171 |
| 1001 | 7 Part 1443 |
| | 25 Part 151 |
| | 32 Part 525 |
| 1017 | 36 Parts 701, 1200 |
| 1114 | 28 Part 64 |
| 1116 | 22 Part 2 |
| 1159 | 25 Part 309 |
| 1261 | 27 Part 72 |
| 1301 et seq | 37 Part 212 |
| 1382 | 32 Parts 527, 552, 770 |
| 1467 | 28 Part 9 |
| 1512 | 28 Part 551 |
| 1621 | 22 Part 51 |
| | 49 Part 1104 |
| 1693—1699 | 39 Parts 310, 320 |
| 1752 | 31 Part 408 |
| 1791—1792 | 28 Part 511 |
| 1791 | 28 Parts 6, 540 |
| 1793 | 28 Part 511 |
| 1851—1861 | 43 Part 9260 |
| 1851—1858 | 43 Part 9230 |
| 1905—1906 | 12 Part 4 |
| 1905 | 19 Part 103 |
| | 20 Part 402 |
| | 21 Parts 20, 26 |
| | 25 Part 516 |
| | 45 Part 5 |
| 1955 | 28 Part 9 |
| 1956—1957 | 39 Part 233 |
| 1963 | 28 Part 9 |
| 2071 | 49 Part 801 |
| 2152 | 32 Part 761 |
| 2253 | 28 Part 9 |
| 2254 | 28 Part 9 |

| 18 U.S.C.—Continued | CFR |
|---|---|
| | 39 Part 233 |
| 2257 | 28 Part 75 |
| 2332d | 31 Parts 500, 515, 535, 538, 550, 560, 575, 596 |
| 2339B | 31 Parts 538, 550, 560 |
| 2341—2346 | 27 Part 296 |
| 2342 | 27 Part 275 |
| 2386 | 28 Part 10 |
| 2510 et seq | 15 Parts 730, 738, 742, 774 |
| 2513 | 28 Part 9 |
| 3001 note | 28 Part 42 |
| 3013 | 28 Part 545 |
| 3050 | 28 Part 511 |
| 3056 | 31 Parts 409, 413 |
| 3059 | 28 Part 7 |
| 3061 | 39 Parts 232, 233 |
| 3181 et seq | 22 Part 171 |
| 3401—3402 | 32 Part 1290 |
| 3401 | 28 Part 52 |
| | 32 Part 516 |
| 3496 | 22 Part 92 |
| 3500 | 32 Part 518 |
| 3521—3528 | 28 Part 524 |
| 3551 et seq | 43 Part 9260 |
| 3551—3586 | 36 Part 242 |
| | 50 Part 100 |
| 3559 | 10 Part 860 |
| | 42 Part 72 |
| 3565 | 28 Parts 527, 571 |
| 3568—3569 | 28 Part 571 |
| 3568 | 28 Part 523 |
| 3569 | 28 Part 527 |
| 3571 | 10 Parts 860, 1048 |
| | 28 Part 545 |
| | 42 Part 72 |
| 3582 | 28 Part 571 |
| 3621—3622 | 28 Parts 500, 501, 505, 511—513, 522—524, 527, 540—545, 547—552, 570, 571 |
| 3621 | 28 Part 553, |
| 3622 | 28 Part 553 |
| 3624 | 28 Parts 500, 501, 505, 511—513, 522—524, 527, 540—545, 547—553, 570, 571 |
| 3663 | 28 Part 545 |
| 4001—4002 | 28 Part 26 |
| 4001 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—553, 570—572 |
| 4001 note | 28 Part 505 |
| 4002 | 8 Parts 236, 241 |
| 4003 | 28 Part 503 |
| 4005 | 28 Parts 549, 551 |
| 4012 | 28 Part 511 |
| 4013 | 8 Parts 236, 241 |
| 4042 | 28 Parts 67, 70, 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—550, 552, 553, 570—572 |
| 4045 | 28 Part 549 |
| 4046 | 28 Part 524 |
| 4081—4082 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—545, 547—550, 552, 553, 570—572 |
| 4100—4115 | 28 Part 527 |
| 4126 | 28 Parts 301, 302, 345, 545, 553 |
| 4161—4166 | 28 Parts 501, 522, 523, 527, 541, 544, 550, 570, 571 |

| 18 U.S.C.—Continued | CFR |
|---|---|
| 4162—4165 | 28 Part 551 |
| 4201—4218 | 28 Parts 527, 571 |
| 4203—4204 | 28 Part 2 |
| 4203 | 28 Part 16 |
| 4205 | 28 Part 572 |
| 4241—4247 | 28 Part 549 |
| 4251—4255 | 28 Part 550 |
| 4351—4353 | 28 Parts 66, 67, 69, 70 |
| 5003 | 28 Part 527 |
| 5006—5024 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—550, 553, 570, 571 |
| 5006—5014 | 28 Part 541 |
| 5006 | 28 Part 552 |
| 5015 | 28 Parts 543, 551, 572 |
| 5017 | 28 Part 2 |
| 5024 | 28 Part 552 |
| 5031—5042 | 28 Part 571 |
| 5039 | 28 Parts 500, 501, 503, 505, 511—513, 522—524, 527, 540—543, 545, 547—550, 552, 553, 570, 572 |
| 5041 | 28 Part 2 |
| 6002 | 14 Part 13 |
| | 16 Part 3 |
| | 49 Part 1503 |
| 6004 | 16 Part 3 |

| 19 U.S.C. | |
|---|---|
| 1 | 19 Parts 24, 101 |
| 2 | 19 Part 101 |
| 58a—58c | 19 Part 24 |
| 58b | 19 Parts 101, 122 |
| 58c | 19 Part 111 |
| 66 | 19 Parts 4, 7, 10—12, 18—19, 24, 37, 54, 101—103, 111—115, 118, 122, 123, 125, 127, 128, 132—134, 141—148, 151, 152, 158, 159, 161—163, 171—177, 181, 191, 192 |
| 81a—81u | 15 Part 400 |
| | 19 Part 146 |
| 81a—81b | 15 Part 400 |
| 81c | 19 Part 191 |
| | 27 Parts 19, 25-26, 251, 252 |
| 81f | 15 Part 400 |
| 81j | 15 Part 400 |
| 81l—81s | 15 Part 400 |
| 197—198 | 19 Part 24 |
| 261 | 19 Part 24 |
| 267 | 19 Part 24 |
| 288 | 19 Part 4 |
| 293—294 | 19 Part 4 |
| 332 | 19 Part 24 |
| 482 | 19 Part 162 |
| 794 | 32 Part 1906 |
| 1202 | 7 Parts 6, 1530 |
| | 9 Part 151 |
| | 15 Parts 30, 301, 315 |
| | 19 Parts 7, 10—12, 18, 19, 24, 54, 101, 102, 111, 114, 123, 125, 128, 132—134, 145, 146, 148, 151, 177, 181, 191 |
| | 27 Parts 251, 252 |
| | 50 Parts 10, 13, 15 |
| 1202 note | 7 Part 6 |
| | 14 Part 1214 |
| | 15 Part 303 |
| | 19 Part 351 |
| 1303 | 19 Parts 207, 353 |

769

| 19 U.S.C.—Continued | CFR |
|---|---|
| 1303 note | 19 Part 351 |
| 1304 | 19 Parts 134, 159 |
| 1305 | 19 Parts 12, 145 |
| 1306 | 7 Part 330 |
| | 9 Parts 92—94, 98, 130 |
| 1309 | 19 Part 191 |
| | 27 Part 252 |
| 1311—1312 | 19 Parts 19, 125, 127 |
| 1311 | 27 Parts 19, 252 |
| 1313 | 19 Part 191 |
| 1315 | 19 Parts 141, 145, 152, 159 |
| 1321 | 19 Parts 10, 128, 159 |
| 1322 | 19 Parts 4, 123 |
| 1331 | 19 Part 201 |
| 1333 | 19 Parts 201, 210 |
| 1335 | 19 Parts 200—202, 204—206, 210, 213 |
| 1336 | 19 Part 207 |
| 1337 | 19 Part 210 |
| 1339 | 19 Part 213 |
| 1342 | 19 Part 210 |
| 1401a | 19 Parts 141, 152 |
| 1402 | 19 Part 141 |
| 1411—1414 | 19 Part 101 |
| 1431 | 19 Parts 103, 122, 123 |
| 1433 | 19 Parts 122, 123 |
| 1436 | 19 Parts 4, 122, 123 |
| 1448 | 19 Parts 19, 122, 123, 141, 142 |
| 1450—1454 | 19 Part 123 |
| 1450 | 19 Parts 19, 24 |
| 1451 | 19 Part 24 |
| 1452 | 19 Part 24 |
| 1456 | 19 Part 24 |
| 1457—1458 | 19 Part 4 |
| 1459—1462 | 19 Part 123 |
| 1459—1461 | 19 Part 162 |
| 1459 | 19 Part 122 |
| 1460 | 19 Part 151 |
| 1461—1462 | 19 Part 148 |
| 1465 | 19 Part 123 |
| 1466 | 19 Part 4 |
| 1467 | 19 Part 162 |
| 1481 | 19 Parts 10, 141, 143, 145, 147, 151 |
| 1484—1485 | 19 Part 141 |
| 1484—1485 | 19 Parts 127, 145 |
| 1484 | 15 Part 30 |
| | 19 Parts 10, 19, 111, 114, 123, 125, 127, 128, 132, 141, 142, 144, 147, 151, 163, 177 |
| 1485 | 19 Parts 24, 127 |
| 1486 | 19 Parts 4, 141 |
| 1487 | 19 Part 141 |
| 1490—1493 | 19 Part 127 |
| 1490 | 19 Parts 4, 141 |
| 1496 | 19 Parts 148, 162 |
| 1498—1499 | 19 Part 141 |
| 1498 | 19 Parts 4, 10, 111, 123, 128, 141, 143, 145, 148 |
| 1499—1500 | 19 Part 152 |
| 1499 | 19 Parts 19, 118, 151, 174 |
| 1500 | 19 Parts 152, 159 |
| 1501 | 19 Parts 145, 173 |
| 1502 | 19 Parts 152, 177 |
| 1502—1503 | 19 Part 152 |
| 1504 | 19 Part 159 |
| 1505 | 19 Parts 4, 24, 141, 159 |
| 1506 | 19 Part 127 |

| 19 U.S.C.—Continued | CFR |
|---|---|
| 1507 | 19 Parts 151, 159 |
| 1508 | 19 Parts 10, 132, 163 |
| 1509 | 19 Part 163 |
| 1510 | 19 Part 163 |
| 1514—1515 | 19 Part 174 |
| 1514 | 19 Parts 145, 191 |
| 1516 | 19 Parts 175, 159 |
| 1516a | 19 Part 356 |
| 1520 | 19 Parts 24, 173 |
| 1524 | 19 Part 24 |
| 1526 | 19 Part 133 |
| 1527 | 19 Part 12 |
| 1551—1553 | 19 Part 18 |
| 1551 | 19 Parts 19, 112, 113, 123, 128 |
| 1552—1553 | 19 Part 142 |
| 1552 | 19 Part 132 |
| 1553—1554 | 19 Part 123 |
| 1555—1557 | 19 Parts 19, 125 |
| 1555—1556 | 19 Part 128 |
| 1555 | 19 Part 144 |
| 1557—1558 | 19 Part 142, 159 |
| 1557 | 19 Parts 24, 132, 144, 151, 159, 191 |
| 1558 | 19 Parts 133, 159 |
| 1559 | 19 Part 127 |
| 1560—1562 | 19 Part 19 |
| 1562—1563 | 19 Part 144 |
| 1562 | 19 Parts 24, 151 |
| 1563 | 19 Parts 127, 158 |
| 1564 | 19 Part 141 |
| 1565 | 19 Parts 19, 112, 113, 123, 128 |
| 1581—1582 | 19 Part 162 |
| 1581 | 19 Part 4 |
| 1583—1586 | 19 Part 4 |
| 1584 | 19 Parts 123, 151 |
| 1590 | 19 Part 122 |
| 1592 | 19 Parts 151, 162, 171 |
| 1593a | 19 Parts 162, 171, 191 |
| 1594 | 19 Parts 122, 162 |
| 1595 | 19 Parts 123, 161, 162 |
| 1595a | 19 Parts 162, 171 |
| 1600 | 19 Part 161 |
| 1602—1624 | 50 Part 12 |
| 1602 | 19 Part 162 |
| 1605 | 19 Part 171 |
| 1606—1608 | 21 Part 1316 |
| 1607 | 27 Part 72 |
| 1610 | 21 Part 1316 |
| | 27 Part 72 |
| 1612—1613 | 27 Part 72 |
| 1613 | 21 Part 1316 |
| | 28 Part 9 |
| 1614 | 19 Part 171 |
| 1618 | 19 Parts 123, 145, 171, 172 |
| | 21 Part 1316 |
| | 27 Part 72 |
| | 28 Part 9 |
| 1619 | 19 Part 161 |
| 1623—1624 | 19 Parts 7, 10, 18, 19, 24, 54, 101, 102, 111, 114, 118, 122, 123, 125, 127, 132, 141, 145—148, 151, 152, 172, 191 |
| 1623 | 19 Parts 24, 112, 113, 133 |
| | 26 Part 48 |
| 1624 | 19 Parts 11—12, 19, 24, 102, 103, 111—113, 115, 123, 128, 133, 134, 141—145, 148, 151, 152, 158, 159, 161—163, 171, 173—178, 181, 191, 192 |

| 21 U.S.C.—Continued | CFR |
|---|---|
| | 880, 882, 884, 886, 888, 890, 892 |
| 360f | 21 Parts 17, 895 |
| 360h—360j | 21 Parts 3, 50, 56, 58, 71, 180, 361, 430, 431, 809, 812, 820, 897, 1003, 1010 |
| 360h—360i | 21 Parts 571, 610, 821, 895 |
| 360h | 21 Parts 660, 810 |
| 360i—360j | 21 Parts 801, 806, 860, 1002 |
| 360i | 21 Parts 17, 660, 800, 803, 807, 822, 862, 874, 900 |
| 360j | 21 Parts 17, 60, 310, 606, 803, 807, 808, 862, 864, 866, 868, 870, 872, 876, 878, 880, 882, 884, 886, 888, 890, 892 |
| 360k | 21 Parts 800, 808 |
| 360l | 21 Parts 26, 820, 822, 876, 878 |
| 360m | 21 Part 26 |
| 360aa—360aaa-6 | 21 Part 99 |
| 360aa—360dd | 21 Part 316 |
| 360aa | 21 Part 316 |
| 360bb | 21 Part 316 |
| 360cc | 21 Part 316 |
| 360gg—360ss | 21 Parts 3, 201, 1020 |
| 360hh—360ss | 21 Parts 1000, 1002 |
| 360nn | 21 Part 900 |
| 361—363 | 21 Part 701 |
| 361—362 | 21 Parts 250, 501, 505, 700, 710, 730, 740, 800 |
| 361 | 21 Parts 2, 70, 71, 73, 74, 300, 310, 500 |
| 362 | 21 Parts 1, 73, 74, 720 |
| 371—372 | 21 Parts 2, 610, 660, 809, 812 |
| 371 | 16 Parts 1502, 1507, 1701, 1702 21 Parts 1, 3, 11, 17, 19, 21, 26, 50, 54, 56, 58, 60, 70, 71, 73, 74, 80—82, 99—102, 104—111, 113, 114, 120, 122, 123, 129—131, 133, 135—137, 139, 145, 146, 150, 152, 155, 156, 158, 160, 161, 163—166, 168—172, 180—182, 184, 186, 189, 200—203, 205—208, 210, 211, 225, 226, 250, 290, 291, 299, 300, 310, 312, 314, 316, 320, 328—333, 336, 338, 340, 343, 341, 344, 346—349, 352, 355, 357, 358, 361, 369, 371, 444, 446, 448—450, 452, 453, 455, 460, 500—502, 509—511, 514, 515, 530, 539, 540, 544, 548, 555, 556, 558, 570, 571, 579, 582, 584, 589, 600, 606, 607, 630, 640, 660, 680, 700, 701, 710, 720, 730, 740, 800, 801, 803, 806—810, 814, 820, 821, 822, 860—862, 864, 866, 868, 870, 872, 874, 876, 878, 880, 882, 884, 886, 888, 890, 892, 895, 897, 898, 1002, 1003, 1010, 1020, 1030, 1040, 1050, 1240, 1250 40 Parts 23, 160, 174, 177—180, 186 |
| 372 | 21 Parts 54, 814 |
| 373—375 | 21 Part 814 |
| 373—374 | 21 Part 179 |
| 373 | 21 Part 54 |
| 374—375 | 21 Part 200 |
| 374 | 21 Parts 1—2, 26, 110, 54, 99, 113, 114, 120, 123, 129, 200, 201, 203, 205, 207, 208, 210, 211, 225, 226, 310, 314, 600, 601, 606, 607, 610, 700, 701, 710, 720, 730, 740, 801, 803, 806, 807, 809, 810, 812, 814, 820, 821, 822, 860, 861, 897, 898, 900, 1002 |
| 375 | 21 Parts 54, 250, 310, 810 |
| 376 | 21 Part 54 |

| 21 U.S.C.—Continued | CFR |
|---|---|
| 379 | 21 Parts 54, 814 |
| 379e | 21 Parts 3, 50, 56, 58, 60, 70, 71, 104—1299, 201, 310, 314, 812 |
| 381 | 21 Parts 3, 26, 50, 56, 58, 71, 120, 180, 203, 207, 320, 361, 430, 431, 514, 607, 610, 807, 809, 812, 814, 820, 1003, 1010, 1020, 1030, 1040, 1050 |
| 382 | 21 Parts 1, 26, 812 |
| 383 | 21 Parts 26, 812, 820 |
| 393 | 21 Parts 1, 26, 120, 123, 207, 607, 807, 897 |
| 394 | 21 Part 3 |
| 451 et seq | 7 Part 15 |
| | 9 Part 391 |
| 451—470 | 9 Parts 300, 416, 417, 424, 441, 500 |
| | 21 Part 381 |
| 463 | 7 Part 1 |
| | 9 Part 325 |
| 467f | 21 Parts 5, 10, 12—16 |
| 601 et seq | 7 Part 15 |
| | 9 Part 307 |
| 601—695 | 9 Parts 300—322, 325, 327, 329, 331, 335, 391, 416, 417, 424, 441, 500 |
| 606 note | 9 Part 335 |
| 607 | 9 Part 317 |
| 612—614 | 9 Part 91 |
| 612—613 | 9 Parts 160—162 |
| 618 | 9 Part 91 |
| 621 | 7 Parts 1, 329 |
| | 9 Parts 305, 316, 319, 325 |
| 624 | 9 Part 325 |
| 645 | 9 Part 331 |
| 657 | 21 Part 1312 |
| 679 | 21 Parts 5, 10, 12—16 |
| 801—886 | 21 Part 5 |
| 802 | 21 Parts 1310, 1313 |
| | 39 Part 232 |
| 811—812 | 21 Parts 1308, 1316 |
| 821—824 | 21 Parts 1301, 1309 |
| 821—822 | 21 Part 1307 |
| 821 | 21 Parts 10, 12—16, 1302—1306, 1308 |
| 822 | 21 Part 1316 |
| 823 | 42 Part 8 |
| 825 | 21 Part 1302 |
| 826 | 21 Part 1303 |
| 827 | 21 Part 1304 |
| 828 | 21 Part 1305 |
| 829 | 21 Part 1306 |
| 830 | 21 Parts 1309, 1310, 1313, 1316 |
| 844 | 39 Part 232 |
| 844a | 28 Part 76 |
| 848 | 28 Part 524 |
| 853 | 28 Part 9 |
| 853a | 45 Part 78 |
| | 49 Parts 1182, 1186 |
| 862 | 46 Part 515 |
| | 49 Part 1104 |
| 871—872 | 21 Part 1316 |
| 871 | 21 Parts 1301—1310, 1313 |
| 875—876 | 28 Part 76 |
| 875 | 21 Parts 1309, 1316 |
| 877 | 21 Part 1309 |
| 880—881-1 | 21 Part 1316 |
| 881 | 19 Part 162 |
| | 28 Part 9 |
| 881 note | 19 Part 171 |

*Executive Orders*—Continued          CFR

13018 .........................................41 Part 102–83
13019 ...........................................29 Part 1650
                                                       31 Part 285
13020 .....................15 Parts 730, 734, 736, 752
13022 ...............................................50 Part 38
13026 .........15 Part-s 730, 732, 734, 736, 738, 740,
                    742, 744, 748, 750, 768, 770, 774
13043 ...............................................43 Part 12
13047 .............................................31 Part 537
13059 .....................................31 Parts 56, 5600
13067 .............................................31 Part 538
13069 .............................................31 Part 590
13088 .....................................31 Parts 586—587
13094 .....................................15 Parts 712, 713
                                                       31 Part 539
13098 .............................................31 Part 590
13099 .............................................15 Part 744
13101 .............................................40 Part 247
13106 ...............................................5 Part 531
13121 .............................................15 Part 744
                                                       31 Part 586—587
13128 .....................................15 Parts 710—721
13129 .............................................31 Part 545
13142 .............................................36 Part 1260
13159 .............................................31 Part 540
13162 ...............................................5 Part 315
13179 .......................................20 Parts 1, 30
                                                       42 Parts 81, 82
13192 .....................................31 Parts 586—587
13194 .............................................31 Part 591
13206 .............................................15 Part 743
13213 .............................................31 Part 591
13219 .............................................31 Part 588
13222 .........15 Parts 732, 736, 734, 738, 740, 742,
                    744, 746, 748, 752, 758, 764, 766, 770,
                                                       772, 774
13224 .............................................15 Part 744

*Directives:*

May 17, 1972 ...............................5 Part 1301
                                                       18 Part 3a
                                                       22 Part 9a
                                                       40 Part 11
Dec. 7, 1979.................................44 Part 351
June 25, 1982 ..............................12 Part 403
Mar. 11, 1983................................12 Part 403
Mar. 28, 1985................................15 Part 378

*Memorandums:*

Nov. 10, 1961 ..............................5 Part 960

*Reorganization Plans:*

1940 Plan No. 4..............................7 Part 612
1946 Plan No. 2.....................20 Parts 25, 501
                                                       42 Part 3
1946 Plan No. 3 ....................15 Parts 9, 10, 16
                                                       43 Parts 1870, 3590
1947 Plan No. 3 ....12 Parts 501, 505c, 511, 521—

*Reorganization Plans*—Continued     CFR

                            523, 541, 563c—572a, 590
1949 Plan No. 2...............................20 Part 603
1950 Plan No. 2.................................8 Part 3
                                                       28 Parts 3, 42
1950 Plan No. 3 .....................25 Parts 150, 250
                                                       30 Part 201
                                                       36 Parts 63, 64, 68, 71, 72
                                                       43 Parts 6, 1780
1950 Plan No. 5..........15 Parts 4, 15, 30, 60, 807
1950 Plan No. 6........20 Parts 10, 701—704, 718,
                    722, 725, 726, 801, 802
                                                       29 Parts 2, 19, 70, 541, 689
                                                       31 Part 21
1950 Plan No. 14 .........29 Parts 1, 3, 5—8, 29, 30
1950 Plan No. 19 ...............20 Parts 25, 61, 501
1950 Plan No. 21 ........46 Parts 206, 222, 251, 276,
                    280, 283, 294, 309, 310, 331, 381, 385,
                                                       390, 391
1950 Plan No. 26 ...................31 Parts 8, 10, 14
                                                       45 Parts 7, 16, 204
1953 Plan No. 2 .........................7 Parts 2, 11
1958 Plan No. 1 ...........................32 Part 185
                                                       46 Parts 345—347
1961 Plan No. 3........14 Parts 213, 216, 247, 384,
                                                       385
1961 Plan No. 7........46 Parts 202, 206, 251, 276,
                    280, 283, 294, 309, 310, 331, 381, 385,
                    390, 391, 501, 550, 581
1965 Plan No. 2 ...........................15 Part 903
1968 Plan No. 2 .........................24 Parts 1, 2
                                                       49 Part 601
1968 Plan No. 3 .............................40 Part 190
1970 Plan No. 2 ...........41 Parts 101—37, 102—33
1970 Plan No. 3 .............................21 Part 193
                    40 Parts 2, 112, 121, 160, 177—179,
                                                       190, 194
1970 Plan No. 4 .............................15 Part 950
                                                       50 Part 260
1973 Plan No. 1 .............................31 Part 9
                                                       46 Parts 345—347
1977 Plan No. 2........22 Parts 62—65, 518
1978 Plan No. 1 .........29 Parts 1614, 1620, 1621,
                    1625 —1627, 1690
1978 Plan No. 2 ...........5 Parts 179, 1250—1255
1978 Plan No. 3 ..........44 Parts 1, 2, 5—10, 12—
                    15, 18, 59—68, 70—73, 75, 150, 151, 201,
                    206, 295, 300—304, 312, 321, 323, 327,
                    329—331, 350, 351, 354, 360, 361
                    48 Parts 4401—4403, 4405, 4406, 4408,
                    4409, 4412, 4414—4417, 4419, 4424, 4426,
                    4429, 4432, 4433, 4435, 4436, 4452
1978 Plan No. 4 ...............................26 Part 1
                                                       29 Parts 2510, 2550
1979 Plan No. 1................................10 Part 1534
1979 Plan No. 3............................15 Part 2009
1980 Plan No. 1 ..............................10 Part 1

845

# Exhibit C



**U.S. Department of Justice**

Environment and Natural Resources Division

---

*Law and Policy Section*
*P.O. Box 4390*
*Washington, DC  20044-4390*

*Telephone (202) 514-1442*
*Facsimile (202) 514-4231*

Mr.
#
FCI
1900 Simler Avenue
Big Spring, TX  79720

AUG 2 8 2007

FOIA No.: FOIA-2007-001

Dear Mr. :

This letter responds to your Freedom of Information Act (FOIA) request for two letters related to the acceptance of concurrent jurisdiction over the "Prison facility FDC Seatas" and the "Federal Transfer Center in Oklahoma City." The Environment and Natural Resources Division (ENRD) received your request on August 16, 2007.  Please find enclosed seven pages of documents, which we release in their entirety.

This determination may be appealed within sixty days of the date of this letter by writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, DC 20530-0001. You should clearly mark your envelope and letter: "Freedom of Information Appeal." See 28 C.F.R. § 16.9(a) and 5 U.S.C. § 552(a)(6)(A).

The cost of processing your request did not exceed our minimum billing threshold, so you will not be charged for this request.

If you need any further assistance, please contact Jacob Lipson at (202) 305-0641.

Sincerely,

Pauline H. Milius
Chief

07 2141

**FILED**

NOV 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Enclosure



**Office of the Attorney General**
**Washington, D. C. 20530**



RECEIVED

MAY - 6 1997

·OE OF THE
GOVERNOR

May 1, 1997


BY CERTIFIED MAIL

The Honorable Frank Keating
Governor of Oklahoma
Oklahoma City, Oklahoma   73105

Dear Governor Keating:

On behalf of the United States, I hereby accept concurrent legislative jurisdiction over the land that presently is the site of the Federal Transfer Center (FTC) in Oklahoma City.

The State of Oklahoma recently enacted Senate Bill No. 283 to cede to the United States concurrent legislative jurisdiction over the FTC site. That bill, styled "An Act Relating to the United States; Ceding Concurrent Jurisdiction Over Certain Real Property to the United States; Reserving Concurrent Jurisdiction for Certain Purposes; Providing for the Termination of Such Jurisdiction; Providing for Codification; and Declaring an Emergency," was signed by you on April 9, 1997.  Section 1 of the Bill provides, in relevant part:

> Notwithstanding any other provision of law, concurrent jurisdiction is hereby ceded to the United States over the tract of land comprised and any tracts of land hereafter comprised within the limits of the Oklahoma City Federal Transfer Center, a facility which is leased to the United States and located at Will Rogers World Airport in Oklahoma City, County of Oklahoma. . . .  The jurisdiction so ceded shall continue no longer than the United States shall lease or own such lands or portions thereof.

Federal law provides that a state's cession of legislative jurisdiction to the United States does not take effect until accepted by the head of the federal department that has custody over the land.  40 U.S.C. § 255.  This letter constitutes the United States' acceptance of concurrent criminal and civil legislative jurisdiction over the tracts of land presently comprised within the limits of the FTC.  Enclosed is a copy of the property description for the land over which the United States accepts concurrent jurisdiction.

The Honorable Frank Keating
Page 2

        Please execute the acknowledgment of receipt of this letter
on the enclosed copy, and return that copy to:

        Michael E. Wall
        United States Department of Justice
        Environment & Natural Resources Division
        Policy, Legislation and Special Litigation Section
        950 Pennsylvania Avenue, NW, Room 2133
        P.O. Box 4390
        Washington, DC  20044-4390

Should you need any further information, please have your staff
contact Mr. Wall on (202) 514-1442, or Jane Crowell, an attorney
with the Federal Bureau of Prisons, on (202) 307-1240.

        I appreciate your assistance in this important area of
federal-state cooperation.

                            Sincerely,

                            Janet Reno

Enclosure


Receipt of the above notice of acceptance of concurrent
legislative jurisdiction over the site of the Federal Transfer
Center in Oklahoma City, Oklahoma, is hereby acknowledged this
_____ day of ___May_____, 1997.

                            Governor of Oklahoma

LEGAL DESCRIPTION
FEDERAL TRANSFER CENTER
WILL ROGERS WORLD AIRPORT
December 11, 1991

PARCEL A -

A tract of land located in the N.W. ¼, Section 34, T. 11 N., R. 4 W., I.M., Oklahoma county, Oklahoma more particularly described as follows:

Commencing at the N.W. Corner of said N.W. ¼, Section 34; thence N.89°47'22"E., along the North line of said N.W. ¼, 50.00° feet to the Point of Beginning of the tract of land herein described;

    Thence N.89°47'22"E. along the North line of said N.W. ¼, 882.62 feet to a point;
    Thence S.00°16'18"E. 280.00 feet to a point;
    Thence S.31°30'43"W. 263.51 feet to a point;
    Thence S.89°47'22"W. 586.41 feet to a point;
    Thence N.66°00'00"W. 83.27 feet to a point;
    Thence S.89°47'22"W. 81.50 feet to a point;
    Thence N.00°16'18"W. 470.00 feet to the Point of Beginning of the tract of land herein described, containing 425,330 square feet of land.

PARCEL B -

A tract of land located in the N.W. ¼, Section 34, T. 11 N., R. 4 W., I.M., Oklahoma county, Oklahoma more particularly described as follows:

Commencing at the N.W. Corner of said N.W. ¼, Section 34; thence N.89°47'22"E., along the North line of said N.W. ¼, 1027.35° feet to the Point of Beginning of the tract of land herein described;

    Thence N.89°47'22"E. 455.00 feet to a point;
    Thence S.00°16'18"E. 485.00 feet to a point;
    Thence S.89°47'22"W. 411.11 feet to a point;
    Thence N.16°34'35"W. 156.33 feet to a point;
    Thence N.00°16'18"W. 335.00 feet to the Point of Beginning of the tract of land herein described, containing 217,386 square feet of land.

° Revised 12/29/92





**Office of the Attorney General**
**Washington, D. C. 20530**

March 20, 1997

RECEIVED

MAR 27 1997

OFFICE OF THE GOVERNOR

BY CERTIFIED MAIL

The Honorable Gary Locke
Governor of Washington
P.O. Box 40002
Olympia, WA  98504

Dear Governor Locke:

On behalf of the United States, I hereby accept concurrent legislative jurisdiction over the site of a Federal Bureau of Prisons facility, near Seattle and Tacoma, Washington, to be used for prisoner detention, correction, and other purposes.  As you may know, construction of the facility, presently known as FDC Seatac, is well under way.  The facility is soon expected to begin operations.

The State of Washington has consented to the acquisition by the United States of land acquired for federal purposes, see Wash. Rev. Code Ann. § 37.04.010, and has ceded concurrent criminal and civil legislative jurisdiction over such land to the United States for all purposes for which the United States acquired the land, see Wash. Rev. Code Ann. § 37.04.020; see also Department of Labor and Industries v. Dirt & Aggregate, Inc., 120 Wash.2d 49, 52-53, 837 P.2d 1018, 1021 (Wash. 1992) (holding that the state may cede legislative jurisdiction to the United States, and that the scope of the federal jurisdiction is governed by the terms of the cession).

Federal law provides that a state's cession of legislative jurisdiction to the United States does not take effect until accepted by the head of the federal department that has custody over the land.  40 U.S.C. § 255.  This letter constitutes the United States' acceptance of concurrent criminal and civil jurisdiction over the site of the facility.  Copies of the

The Honorable Gary Locke
Page 2

Declaration of Taking and general warranty deeds for the site are
enclosed.

Concurrent legislative jurisdiction will mutually benefit
the State of Washington and the United States. Absent federal
legislative jurisdiction, the state would have the entire burden
of prosecuting offenses that might be committed at the facility,
except those offenses that violate federal law even when
committed outside areas of federal legislative jurisdiction.
Concurrent jurisdiction enables the United States to investigate
and prosecute certain offenses when appropriate, without
displacing state authorities. Criminal offenses perpetrated by
or against federal prisoners confined at the institution can be
investigated by the Federal Bureau of Investigation and
prosecuted by the United States Attorney. Thus, cession of
concurrent jurisdiction may relieve the State of some of the
burden of investigating and prosecuting criminal offenses that
occur at the federal institution. In some situations, it might
be more appropriate for the State to investigate and prosecute
violations of state law, and the State could do so.

Please execute the acknowledgment of receipt of this letter
on the enclosed copy, and return that copy to:

Michael E. Wall
United States Department of Justice
Environment & Natural Resources Division
Policy, Legislation and Special Litigation Section
950 Pennsylvania Avenue, NW, Room 2133
P.O. Box 4390
Washington, DC 20044-4390.

Should you need any further information, please have your staff
contact Mr. Wall on (202) 514-1442, or Jeffrey J. Limjoco, an
attorney with the Federal Bureau of Prisons, on (202) 307-1240.

The Honorable Gary Locke
Page 3

    I appreciate your assistance in this important area of federal-state cooperation.

                  Sincerely,

                  Janet Reno

Enclosures


Receipt of the above notice of acceptance of concurrent legislative jurisdiction over the site of the Federal Detention Center near Seattle and Tacoma, Washington (FDC Seatac) is hereby acknowledged this _11th_ day of _April_ , 1997.

                  Governor of Washington

# Exhibit D

Evidentary Hearing

[ not submitted ]

07 2141

**FILED**

NOV 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# Exhibit E



UNITED STATES

OF AMERICA

# Congressional Record

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS
SECOND SESSION

## VOLUME 94—PART 8

JULY 26, 1948, TO DECEMBER 31, 1948
(PAGES 9353 TO 10316)

07 2141

FILED

NOV 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1948

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF

COLUMBIA

| | | |
|---|---|---|
| | * | Civil No. _____ |
| OZIEL MARTINEZ | * | Case No. ██-██-███-█ |
|     Petitioner, | * | |
| | * | |
| vs. | * | |
| | * | |
| ATTORNEY GENERAL FOR THE | * | JUDICIAL NOTICE |
| "UNITED STATES", | * | IN THE NATURE OF |
| and | * | RULE 201(d) OF THE |
| HARLEY G. LAPPIN, Dir., | * | FEDERAL RULES OF EVIDENCE |
| FEDERAL BUREAU OF PRISONS, | * | |
| | * | |
|     Respondent(s). | * | |

BEFORE THIS HONORABLE COURT:

NOW COMES, Oziel Martinez, in want of counsel, Petitioner in the above captioned cause, and for the instant motion to request 'Judicial Notice' in the nature of Rule 201(d) of the Federal Rules of Evidence, shows this court the following:

1.

That the Petitioner requests the court to take 'Judicial Notice' of a certain excerpt from the United States Government's publication, which is specifically, the **"Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas within the [several sovereign] states."**

07 2141

**FILED**

NOV 2 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1. Judicial Notice - Rule 201(d)

2.

That the petitioner requests the court to take 'Judicial Notice' of the statutes of the State of Texas, without limitation, at Chapter 1, § 1, et. seq.

3.

That the Petitioner requests this court to take 'Judicial Notice,' without limitation, to Article I, Section 8, Clause 17, in amendment to the Constitution of the United States.

4.

That the Petitioner requests the court to take 'Jucial Notice,' of the Government's 'charging instrument's (attached hereto) whereon, the Government fails to describe a 'locus in quo,' wherein the alleged violative conduct of the undersigned was committed ; which is within the legislative, territorial, or admiralty jurisdiction of the federal United States corporation. **(28 U.S.C. §3002(15(A)).**

5.

That the petitioner requests the court to take 'Judicial Notice' of the self-evident fact that the Government's charging instrument(s) fail to allege or charge the undersigned with an alleged violation of the 'federal commerce clause,' which is the 'sine qua non' to the legitimate application of the federal statutory provisions under which the undersigned was charged, without nexus to the former, there can be no operation of the latter.

6.

That the Petitioner submits the following judicial review by this court, citing from the Government's report entitled: **"JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES"**, SUBTITLED "Report of the Interdepartmental Committee for the study of Jurisdiction over Federal Areas within the States."

2. Judicial Notice - Rule 201(d)

The Constitution of the United States at Article I, Section 8, Clause 17:

"The Congress shall have the Power...To exercise exclusive Legislation in all Cases whatsoever, over such District (no exceeding ten Mile square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;---And to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers and all other Powers vested by this Constitution in the Government of the United States, or any Department or Officer therof..."

The significance of the foregoing, in the above styled action is, the purported Petitioner herein cannot demonstrate that the Court has jurisdiction to adjudicate the matter. In support of the said argument, the undersigned refers the Court to a publication entitled **JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES**, and subtitled Report of the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States, which was published in two volumes by the United States printing office, of which both the Respondents and the court are very well aware of. Excerpts from the said publication are as follows:

3. Judicial Notice - Rule 201(d)

# Jurisdiction Over Federal Areas Within The States: Parts I & II

This is the 'Report of the Interdepartmental Committee For The Study of Jurisdiction Over Federal Areas Within the States'. Part I: *The Facts and Committee Recommendations* and Part II: *A Text of the Law of Legislative Jurisdiction*. Eight departments and twenty-five agencies provided 'information' to this committee, a few being the; Departments of Defense, Justice, Interior, State, Treasury, Commerce, Labor plus the Atomic Energy, Federal Communications and Federal Power Commissions and was submitted to the Attorney General and transmitted to the President, April 1956 by the United States Government Printing Office, Washington.

This is an analysis of the problems of jurisdiction related to federally owned property within the States. Part I (250 pages), is a 'factual report with recommendations for changes in Federal agency practice, and in Federal and State laws. Part II (349 pages), discusses the law applicable to Federal jurisdiction over land owned in the States. Of special interest is the information in Appendix B which includes the texts of principal State and Federal constitutional provisions and statutes related to jurisdiction, set forth for each state. Part II is a compilation' of the court decisions and legal opinions weighted in the course of the report by the committee. This also includes a chapter that delineates the 'Areas Not Under Legislative Jurisdiction'.

Petitioner declares under penalty of perjury in the nature of 28 U.S.C.S. § 1746(1), that the following publication entitled JURISDICTION OVER FEDERAL AREAS WITHIN THE STATES, was transcribed, due to the inability to be reproduced.

Dated on this 19 day of NOV. , 2007

Oziel Martinez, Petitioner, Pro se.

"The White House,
Washington, April 27, 1956

Dear Mr. Attorney General:

I am herewith returning to you, so that it may be published and receive the widest possible distribution among those interested in Federal real property matters, Part I of the Report of the interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. I am impressed by the well-planned effort which went into the study underlying this report and by the soundness of the recommendations which the report makes.

It would seem particularly desirable that the report be brought to the attention of the Federal administrators of real properties, who should be guided by it in matters related to legislative jurisdiction, and to the President of the Senate, the Speaker of the House of Representatives, and appropriate State officials, for their consideration of necessary legislation. I hope you will see to this. I hope, also, that the General Services Administration will establish as soon as may be possible a central source of information concerning the legislative jurisdictional status of Federal properties and that that agency, with the Bureau of the Budget and the Department of Justice, will maintain a continuing and concerted interest in the progress made by all Federal agencies in adjusting the status of their properties in conformity with the recommendations made in the report.

The members of the Committee and the other officials , Federal and State, who participated in the study, have my appreciation and congratulations on this report. I hope they will continue their good efforts so that the text of the law on the subject of legislative jurisdiction which is planned as a supplement will issue as soon as possible.


Sincerely,
Dwight D. Eisenhower.

The Honorable Herbert Brownell, Jr.,
The Attorney General, Washington, D.C."


and


4. Judicial Notice - Rule 201(d)

## LETTER OF SUBMISSION

INTERDEPARTMENTAL COMMITTEE FOR THE STUDY OF JURISDICTION OVER
FEDERAL AREAS WITHIN THE STATES
June 17, 1957

Dear Mr. Attorney General:
   With the encouragement of the President, the understanding aid of you and
the heads of the other Federal agencies represented on the Committee, and the
invaluable assistance of the Attorney General of the several States and of the
principal law officers of nearly all Federal agencies, the Committee now has
completed, and herewith submits, the final portion of its report, subtitled "Part
II, A Text of the Law of Legislative Jurisdiction."
   This "Part II" supplements the portion of the Committee's report which you
transmitted to the president on April 27, 1956. With its submission the work
assigned to the Committee has been completed, and it is recommended that the
Committee be dissolved.

   Respectfully submitted,
   PERRY W. MORTON,
   Assistant Attorney General (Chairman).

   ROBERT DECHERT,
   General Counsel, Department of Defense (Vice Chairman).

   HENRY H. PIKE,
   Associate General Counsel, General Services Administration (Secretary).

   ARTHUR B. FOCKE,
   Legal Advisor, Bureau of Budget.

   ELMER F. BENNETT,
   Solicitor, Department of the Interior.

   ROBERT L. FARRINGTON,
   General Counsel, Department of Agriculture.

   PARKE M. BANTA,
   General Counsel, Department of Health, Education, and Welfare.

   GUY H. BIRDSALL,
   General Counsel, Veterans Administration.

5. Judicial Notice — Rule 201(d)

## LETTER OF TRANSMITTAL

Office of the Attorney General,
Washington, DC, June 28, 1957.

Dear Mr. President:

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States now has submitted the second, and final, part of its report, a text of the law of legislative jurisdiction over such areas.

This exhaustive and analytical exposition of the law in this hitherto little explored field is a valuable supplement to the first part of the report, the compilation of facts, with recommendations, which received your recommendation in April 1956, and constitutes a major addition to legal bibliography.

Together, the two parts of this committees report and the full implementation of its recommendations will provide a basis for reversing an many areas the swing of "the pendulum of power"***from our states to the central government, to which you referred in your address to the Conference of State Governors on June 25, 1957.

The excellence of the work of the Committee reflects great credit upon its Chairman and members. Also specially noteworthy is the splendid assistance which the Committee received from the attorneys general of the several States, the general counsels of Federal agencies, and other State and Federal officials.

With the submission of this second part of its report the Committee has completed its work and recommends that it be dissolved. Since the Departments and other permanent agencies of the Federal Government now can carry out directions which you have issued based upon the work of the Committee, I join in this recommendation.

Respectfully,
Herbert Brownell, Jr.

6. Judicial Notice – Rule 201(d)

### LETTER OF ACKNOWLEDGEMENT

The White House
Washington, July 8, 1957

Dear Mr. Attorney General:

I have taken note of the final report (Part II) which you transmitted to me, rendered by the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States. It is my understanding that the report is to be published and distributed, for the purpose of making available to Federal administrators of real property, Federal and State legislators, the legal profession, and others, this text of the law of legislative jurisdiction in these areas.

In view of the fact that the work of the Committee is complete, and since other departments and agencies of the Government now have clear direction for turning this work into permanent gains in improved Federa-State relations, the Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States is hereby dissolved.

Chairman Perry W. Morton and the members of this Committee have my congratulations and sincere appreciation of their service to our country in bringing to light the facts and law in this much neglected field. This monumental work, culminating three years of exhaustive effort, lays an excellent foundation for allocating to the States some of the functions which under our Federal-State system should properly be performed by State Governments.

Sincerely,
Dwight Eisenhower

The Honorable Herbert Brownell, Jr.,
The Attorney General, Washington, D.C.

7. Judicial Notice - Rule 201(d)

# PREFACE

The Interdepartmental Committee for the Study of Jurisdiction over Federal Areas within the States was formed on December 15, 1954, on the recommendation of the Attorney General approved by the President and the Cabinet. The basic purpose for which the committee was founded was to find means for resolving the problems arising out of jurisdictional status of Federal lands. Addressing itself to this purpose, the Committee; with assistance from all Federal agencies interested in the problem (a total of 33 agencies), from State Attorney General, and from numerous other sources, prepared a report entitled Jurisdiction over Federal Areas Within the States, Part I, The Facts and Committee Recommendations. This report, approved by the President on April 27, 1956, set out the findings of the Committee and recommended changes in Federal and State Law, and in Federal agencies' practices, designed to eliminate existing problems arising out of legislative jurisdiction. It included two appendices.

The Committees research, involved a general survey of the jurisdictional status of all federally owned real property in the 48 States, and a detailed survey of the status of individual such properties in the States of Virginia, Kansas, and California. These three named States were selected as containing Federal real properties representative of such properties in all the States. Information was procured concerning the practices and problems related to legislative jurisdiction of the 23 Federal Agencies controlling real property, and of the advantages and disadvantages of the several legislative jurisdictional statute for the various purposes for which federally owned land is used. This information is reflected and analyzed in the several chapters of Part I of the report, and is summarized in Appendix A of the same part.

The Committees study included a review of the policies, practices, and problems of the 48 States related to legislative jurisdiction. Information concerning these matters similarly is reflected and analyzed in various portions of Part I of the report, with Chapter V of the part being entirely devoted to the laws and problems of States related to legislative jurisdiction. Also, the texts of State (and Federal) constitutional provisions and statutes related to jurisdiction in effect as of December 31, 1955, are gathered in Appendix B of Part I.

The major conclusions of the Committee, set out in Part I of the report, which, of course, are applicable only to the 48 States to which the Committee study extended, and do not apply to present Territories or the District of Columbia, are to the effect that in the usual case the Federal Government should not receive or retain any of the State's Legislative Jurisdiction within federally owned areas, that in some special cases (where general law enforcement by Federal authorities is indicated) the Federal Government should receive or retain legislative jurisdiction only concurrently with the States, and that in any case, the Federal Government should not receive or retain any of the State's legislative jurisdiction with respect to taxation, marriage, divorce, descent and distribution of property, and a variety of other matters, specified in the report, which are ordinarily the subject of State control.

The conclusions reached by the Committee were, of course, made only after an appraisal of the facts adduced during the study in the light of applicable law, including the great body of decisions handed down by courts, and opinions rendered by governmental legal officers, Federal and State, interpretative of situations affected by legislative jurisdiction.

8. Judicial Notice – Rule 201(d)

Recommendations made by the Committee, based on the conclusions indicated above and on certain subsidiary findings, now constitute the policy of the Executive branch of the Federal Government, and are being implemented by Federal agencies to the extent possible under existing law. However, full implementation of these recommendations must await the enactment of certain suggested Federal and State legislation.

In the course of its study, the Committee ascertained the existence of serious lack of legal bibliography on the subject-matter of its interest. With the concurrence of the Attorney General of the United States and the encouragement of the President, it has proceeded with the publication of this Part II of its report, a compilation of the court decisions and legal opinions it weighed in the course of its study of the subject of Legislative jurisdiction.

## LAW OF LEGISLATIVE JURISDICTION

Legal Problems many.--In view of the vastness of Federal real estate holdings, the large variety of activities conducted upon them, and the presence on many areas of resident employees and other persons, it is to be expected that many legal problems will arise on or with respect to these holdings. In addition to the problems, normally encountered in administering and enforcing Federal laws, complicated by occasional conflict with overlapping State laws, the ownership and operation by the Federal Government of areas within the States, gives rise to a host of legal problems largely peculiar to such areas. They arise not only because of the fact of Federal ownership and operation of these properties, but also because in numerous instances, the Federal Government has with respect to such properties a special jurisdiction which excludes, in varying degrees. The Jurisdiction of the State over them, and which in other instances is, to varying extents, concurrent with that of the State.

## FEDERAL POSSESSION OF EXCLUSIVE JURISDICTION

By Constitutional consent.--This special jurisdiction which is often possessed by the United States, stems, basically, out of Article I, Section 8, Clause 17, of the Constitution of the United States, which provides, in legal effect, that the Federal Government shall have exclusive legislative jurisdiction over such area, not exceeding 10 miles square, as may become the seat of the Government, with the consent of the State involved, for various Federal purposes. It is the latter part of the clause, the part which has been emphasized, with which this study is particularly concerned. There is a general public awareness of the fact that the United States Government exercises all governmental authority over the District of Columbia, by virtue of power conferred upon it by a clause of the Constitution. There is not the same awareness that under another provision of this same clause, the United States has acquired over several thousand areas within the States, some or all of those powers, judicial and executive as well as legislative, which under our Federal-State system of government, ordinarily are reserved to the States.

BY Federal reservation or State cession. For many years after the adoption of the Constitution, Federal acquisition of State-type legislative jurisdiction occurred only by direct operation of Clause 17. The clause was activated through the enactment of State statutes consenting to the acquisition by the Federal

9. Judicial Notice - Rule 201(d)

Government either of any land, or of specific tracts of land, within the State. In more recent years the Federal Government has in several instances made reservations of jurisdiction over certain areas in connection with the admission of State into the Union. A third means for transfer of legislative jurisdiction now has come into considerable use, whereby in a general or special statute a State makes a cession of jurisdiction to the Federal Government. Courts and other legal authorities have distinguished at various times between Federal legislative jurisdiction derived, on the one hand, directly from operation of Clause 17, and, on the other, from a Federal reservation or a State cession of jurisdiction. In the main, however, the characteristics of a legislative Jurisdiction status are the same, no matter by which of the three means the Federal Government acquired such status. Differences in these characteristics will be specially pointed out in various succeeding portions of this work.

Governmental Power, merged in Federal Government. -- Whether by operation of Clause 17, by reservation of jurisdiction by the United States, or by cession of jurisdiction by States, in many areas all governmental authority (with recent exceptions which will be noted) has been merged in the Federal Government, with none left in any State. By this means some thousands of areas have become Federal islands, sometimes called "enclaves,.. in many respects foreign to the States in which they are situated. In general, not State but Federal law is applicable in an area under the exclusive legislative jurisdiction of the United States, for enforcement not by State but Federal authorities, and in many instances not in State but in Federal courts. Normal authority of a State over areas within its boundaries, and normal relationships between a State and its inhabitants, are disturbed, disrupted, or eliminated, as to enclaves and their residents.

The State no longer has the authority to enforce its criminal laws in areas under the exclusive jurisdiction of the United States. Privately owned property in such areas is beyond the taxing authority of the State. It has been generally held that residents of such areas are not residents of the State, and hence not only are not subject to the obligations of residents of the State but also are not entitled to any of the benefits and privileges conferred by the State upon its residents. Thus, residents of Federal enclaves usually cannot vote, serve on juries, or run for office. They do not, as a matter of right, have access to State schools, hospitals, mental institutions, or similar establishments. The acquisition of exclusive jurisdiction by the Federal Government renders unavailable to the residents of the affected areas, the benefits of the law and judicial and administrative processes of the State, relating to adoption, the probate of wills and administration of estates, divorce and many other matters. Police, firefighting, notarial, coroner, and several similar services performed by or under the authority of a State, may not be rendered with legal sanction, in the usual case, in a Federal enclave.

## EXERCISE OF EXCLUSIVE FEDERAL JURISDICTION

Legislative authority little exercised. -- States do not have authority to legislate for areas under the exclusive legislative Jurisdiction of the United States, but the Congress has not legislated for these areas either, except in some minor particulars.

10. Judicial Notice -- Rule 201(d)

**Exercise as to crimes.** -- With respect to crimes occurring within Federal enclaves, the Federal Congress has enacted the Assimilative Crimes Act, which adopts for enclaves, as Federal Law, the State law which is in effect at the time the crime is committed. The Federal Government also has specifically defined and provided for the punishment of a number of crimes which may occur in Federal enclaves, and in such cases that the specific provision, of course, supersedes the Assimilative Crimes Act.

Exercise as to civil matters. -- Federal legislation has been enacted authorizing the extension to Federal enclaves of the workmen's compensation and unemployment compensation laws of the States within the boundaries of which the enclaves are locate. The Federal Government also has provided that State law shall apply in suits arising out of the death or injury of any person by the neglect or wrongful act of another in an enclave. It has granted to the States, the right to impose taxes on motor fuels sold on Government reservations, and sales, use, and income taxes on transactions or uses occurring or services performed on such reservations. It has allowed taxation of leasehold interest in Federal property including property locate on Federal enclaves. And it has retroceded to the States jurisdiction pertaining to the administration of estates of residents of Veterans Administration facilities. This is the extent of Federal legislation enacted to meet the special problems existing on areas under the exclusive legislative jurisdiction of the United States.

## RULE OF INTERNATIONAL LAW

Extended by courts to provide civil law. -- The vacuum which would exist because of the absence of State law or Federal legislation with respect to civil matters in areas under Federal exclusive legislative jurisdiction, has been partially filled by the courts, through extension to these areas of a Rule of International Law, that when one sovereign takes over territory of another, the laws of the original sovereign in effect at the time of the taking which are not inconsistent with the laws or policies of the second continue in effect, as laws of the succeeding sovereign, until changed by that sovereign.

## ACQUISITION OF LEGISLATIVE JURISDICTION
### THREE METHODS FOR FEDERAL ACQUISITION OF JURISDICTION

**Constitutional Consent.** -- The Constitution gives express recognition to but one means of Federal acquisition of legislative jurisdiction -- by State consent under Article I, Section 8, Clause 17. The debates in the Constitutional Convention and State ratifying conventions leave little doubt that both the opponents and proponents of Federal exercise of exclusive legislative jurisdiction over the seat of government were of the view that a Constitutional provision such as Clause 17, was essential if the Federal Government was to have such jurisdiction. At no time was it suggested that such provision was unessential to secure exclusive Legislative jurisdiction to the Federal Government over the seat of government. While, as has been indicated in the preceding chapter, little attention was given in the course of the debates to Federal exercise of exclusive legislative jurisdiction over areas other than the seat of government. It is reasonable to assume that it was the general view that a special constitutional provision was essential to enable the United States to acquire exclusive

11. Judicial Notice - Rule 201(d)

legislative jurisdiction over any area. Hence, the proponents of exclusive legislative jurisdiction over the seat of the government and over federally owned areas within the States. defended the inclusion in the Constitution of a provision such as article I, Section 8, Clause 17. And in **United States v. Railroad Bridge Co.**, 27 Fed. Cas. 686, 693, No. 16,114 (C.C.N.D.III., 1855), Justice McLean suggested that the Constitution provided the sole mode for transfer of jurisdiction, and that if this mode is not pursued, no transfer of jurisdiction can take place.

    **State cession.** -- However, in **Fort Leavenworth R.R. v. Lowe**, 114 U.S. 525 (1885), the United States Supreme Court sustained the validity of an act of Kansas ceding to the United States legislative jurisdiction over the Fort Leavenworth military reservation, but reserving to itself the right to serve criminal and civil process in the reservation and the right to tax railroad, bridge, and other corporations, and their franchises and property on the reservation. In the course of its opinion sustaining the cession of legislative jurisdiction, the Supreme Court said (p.540):

"We are here met with the objection that the Legislature of a State has no power to cede away her jurisdiction and legislative power over any portion of her territory, except as such cession follows under the Constitution from her consent to a purchase by the United States for some one of the purposes mentioned. If this were so, it could not aid the railroad company; the jurisdiction of the State would then remain as it previously existed. But aside from this consideration, it is undoubtedly true that the State, whether presented by her Legislature, or through a convention specially called for that purpose, is in competent to cede her political jurisdiction and legislative authority over any part of her territory to a foreign country, without the concurrence of the general government. The jurisdiction of the United States extends over all the territory within the States. And, therefore,their authority must be obtained, as well as that of the State within which the territory is situated, before any cession of sovereignty or political jurisdiction can be made to a foreign country.\*\*\* In their relation to the general government, the State of the Union stand in a very different position from that which they hold to foreign governments. Though the jurisdiction and authority of the general government are essentially different from those of the State, they are not those of different country. And the two, the State and general government, may deal with each other in any way they may deem best to carry out the purposes of the Constitution. It is for the protection and interest of the people generally of the United States, that forts, arsenals, and other buildings for public use are constructed within the States. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the States as would defect or impair their use for those purposes. And if, to their more effective use, a cession of legislative authority and political jurisdiction by the State would be desirable, we do not perceive any objection to its grant by the Legislature of the State. Such cession is really as much for the benefit of the State as it is for the benefit of the United States."

Had the doctrine thus announced in **Fort Leavenworth R.R. v. Lowe**, supra, been known at the time of the constitutional Convention, it is not improbable that Article I, Section 8 , Clause 17, at least insofar as it applies to areas other than the seat of government, would not have been adopted. Cession as a method of transfer of jurisdiction by a State to the United States is now well established, and quite possibly has been the method of transfer in the majority of instances in which the Federal.....

Federal Reservation. -- In **Fort Leavenworth R.R. v. Lowe**, supra, the Supreme Court approved a second method not specified in the Constitution of securing legislative jurisdiction in the United States. Although the matter was not in issue in the case, the Supreme Court said (p.526):

"The land constituting the Reservation was part of the territory acquired in 1803, by cession from France, and, until the formation of the State of Kansas, and her admission into the Union, the United States possessed the rights of a proprietor, and had political dominion and sovereignty over it. For many years before that admission, it had been reserved from sale by the proper authorities of the United States for military purposes, and occupied by them as a military post. The jurisdiction of the United States over it during this time was necessarily paramount. But in 1861 Kansas was admitted into the Union upon an equal footing with the original States, that is, with the same rights of political dominion and sovereignty, subject like them only to the Constitution of the United States. Congress might undoubtedly, upon such admission, have stipulated for retention of the political authority, dominion and legislative power of the United States over the Reservation, so long as it should be used for military purposes by the government. That is, it could have excepted the place from the jurisdiction of Kansas, as so needed for the uses of the general government. But from some cause, inadvertence perhaps, or over-confidence that a recession of such jurisdiction could be had whenever desired, no such stipulation or exception was made."

Almost the same language was used by the Supreme Court of Kansas in **Clay v. State**, 4 Kan. 49 (1866), and another suggestion - of judicial recognition of this doctrine is to be found in an earlier case in the Supreme Court of the United States, **Langford v. Montieth**, 102 U.S. 145 (1880), in which it was held that when an act of Congress admitting a State into the Union, provides, in accordance with a treaty, that the lands of an Indian tribe shall not be a part of such State or Territory. The new State has no jurisdiction over them. "The enabling acts governing the admission of several of the States provided that exclusive jurisdiction over ceratin areas was to be reserved to the United States". In view of these developments, an earlier opinion of the United States Attorney General indicating that a State legislature, as distinguished from a State constitutional convention, had to give the consent to transfer jurisdiction specified in the Federal Constitution (12 Ops. A. G. 428 (1868)), would seem inapplicable to a Federal reservation of jurisdiction.

Since Congress has the power to create States out of Territories and to prescribe the boundaries of the new States, the retention of exclusive legislative jurisdiction over a federally owned area within the State at the time the State is admitted into the Union would not appear to pose any serious constitutional difficulties.

No Federal Legislative Jurisdiction without consent cession, or reservation. -- It scarcely needs to be said that unless there has been a transfer of jurisdiction

13. Judicial Notice - Rule 201(d)

(1) pursuant to Clause 17 by a Federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, the Federal Government possesses no legislative jurisdiction over any area within a State. Such jurisdiction being for exercise entirely by the State, subject to non-interference by the State with Federal functions, and subject to the free exercise by the Federal Government of rights, with respect to the use, protection, and disposition of its property.

## NECESSITY OF STATE ASSENT TO TRANSFER OF JURISDICTION TO FEDERAL GOVERNMENT

**Constitutional Consent.** -- The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any areas within the exterior boundaries of a State. Article I, Section 8, Clause 17, of the Constitution, provides that legislative jurisdiction may be transferred to its terms, only whit the consent of the legislature of the State in which is located the area subject to the jurisdictional transfer. As was indicated in Chapter II, the consent requirement of Article I, Section 8, Clause 17, was intended by the framers of the Constitution to preserve the State Jurisdictional integrity against Federal encroachment.

**State cession or Federal reservation.** -- The transfer of legislative Jurisdiction pursuant to either of the two means not spelled out in the Constitution likewise requires the assent of the State in which is located the area subject to the jurisdictional transfer. Where legislative jurisdiction is transferred pursuant to a State cession statute, the State has quite clearly assented to the transfer of legislative jurisdiction to the Federal Government, since the enactment of a State cession statute is a voluntary act on the part of the legislature of the State.

The second method not spelled out in the Constitution of vesting legislative jurisdiction in the Federal Government, namely, the reservation of legislative jurisdiction by the Federal Government at the same statehood is ranted to a Territory, does not involve a transfer of legislative jurisdiction to the Federal Government by a State, since the latter never had jurisdiction over the area with respect to which legislative jurisdiction is reserved. While under the second method of vesting legislative jurisdiction in the Federal Government, the latter may reserve such jurisdiction without inquiring as to the wishes or desires of the people of the Territory to which statehood has been granted, nevertheless, the people of the Territory involved have approved, in at least a technical sense, such reservation. Thus, the reservation of legislative jurisdiction constitutes, in the normal case, one of the terms and conditions for granting statehood, and only if all of the terms and conditions are approved by a majority of the voters of the Territory, or by a majority of the Territorial legislature, is statehood granted.

## NECESSITY OF FEDERAL ASSENT

**Express Consent Required by R.S. 355.** -- Acquiescence, or acceptance, by the Federal Government, as well as by the State, is essential to the transfer of legislative jurisdiction to the Federal Government. When legislative jurisdiction is reserved by the Federal Government at the time statehood is granted, to a

14. Judicial Notice - Rule 201(d)

Territory, it is, of course, obvious that the possession of legislative jurisdiction meets with the approval of the Federal Government. When legislative jurisdiction is to be transferred by a State to the Federal Government either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a State cession statute, the necessity of Federal assent to such transfer of legislative jurisdiction has been firmly established by the enactment of the February 1, 1940, amendment to R.S. 355. While this amendment in terms specifies, requirement for formal Federal acceptance, prior to the transfer of exclusive or partial legislative jurisdiction, it also applies to the transfer of concurrent jurisdiction. The Supreme Court, in **Adams v. United States**, 319 U.S. 312 (1943), in the course of its opinion said (pp.314-315):

> "Both the Judge Advocate General of the Army and the Solicitor of the Department of Agriculture have construed the 1940 Act as requiring that notice of acceptance be filed if the government is to obtain concurrent jurisdiction. The Department of Justice has abandoned the view of jurisdiction which prompted the institution of this proceeding, and now advises us of its view that concurrent jurisdiction can be acquired only by the formal acceptance prescribed in the Act. These agencies cooperated in developing the Act, and their views are entitled to great weight in its interpretation. *** Besides, we can think of no other rational meaning for the phrase "jurisdiction, exclusive or partial," than that which the administrative construction gives it. Since the govern merit had not accepted jurisdiction in the manner required by the Act, the federal court had no jurisdiction of this proceeding. In this view, it is immaterial that Louisiana statutes authorized the government to take jurisdiction, since at the critical time the jurisdiction had not been taken."

Former Presumption of Federal acquiescence of dissent. -- Even before the enactment of the 1940 amendment to R.S. 355, it was clear that a State could not transfer, either pursuant to Article I, Section 8, Clause 17, of the Constitution, or by means of a cession statute, legislative jurisdiction to the Federal Government without the latter's consent prior to the 1940 amendment to R.S. 355. However, it was not essential that the consent of the Federal Government be expressed formally or in accordance with, any prescribed procedure. Instead, it was presumed that the Federal Government accepted the benefits of a State enactment providing for the transfer of legislative jurisdiction. As discussed more fully below, this presumption of acceptance was to the effect that once a State legislatively indicated a willingness to transfer exclusive jurisdiction, such jurisdiction passed automatically to the Federal Government without any action having to be taken by the United States. However, the presumption would not operate where Federal action was taken, demonstrating dissent from the acceptance of proffered jurisdiction.

Presumption in transfers by cession. -- In **Fort Leavenworth R.R. v. Lowe**, supra, in which a transfer of legislative jurisdiction by means of a State cession statue was approved for the first time, the court said (p.528), that although the Federal Government had not in that case requested a cession of jurisdiction, nevertheless, "[a]s it conferred a benefit, the acceptance of the act is to be presumed in the absence of any dissent on their part." See also, **United States v. Johnston**, 58 F.Supp. 208, aff'd., 146 F.2d 268 (C.A.9,1944), cert. den., 324 U.S. 876, 38 Ops. A.G. 341 (1935). A similar view has been expressed by a number of courts to transfers of jurisdiction by cession. In some instances, however, the courts have indicated the existence of affirmative grounds supporting Federal acceptance of such transfers. In, **Yellowstone Park Transp. Co. v. Gallatin County**,

15. Judicial Notice - Rule 201(d)

31 F.2d 644 (C.A.9,1929), cert. den., 280 U.S. 555, it was stated that acceptance by the United States of a cession of jurisdiction by a State over a national park area within the State may be implied from acts of Congress providing for exclusive jurisdiction in national parks. See also **Columbia River Packers, Ass'n v. United States**, 29 F.2d 91 (C.A.9,1928), **United States v. Unzueta**, 281 U.S. 138 (1938).

   **Presumption in transfers by constitutional consent.** -- Until recent years, it was not clear but that the consent granted by a State pursuant to Article I, Section 8, Clause 17, of the Constitution, would under all circumstances serve to transfer legislative jurisdiction to the Federal Government where the latter had "purchased" the area and was using it for one of the purposes enumerated in Clause 17. In **United States v. Cornell**, 25 Fed. Cas. 646, No. 14,867 (C.C.D.R.I., 1819), Justice Story expressed the view that Clause 17 is self-executing, and acceptance by the United States of the "benefits" of State consent statute was not mentioned as an essential ingredient to the transfer of legislative jurisdiction under Clause 17. In the course of his opinion in that case, Justice Story said (p.648):

"The constitution of the United States declares that Congress shall have power to exercise "exclusive legislation" in all "cases whatsoever", over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards and other needful buildings. When therefore a purchase of land for any of these purposes is made by the national government, and the state legislature has given its consent to the purchase, the land so purchased by the very terms of the constitution ipso facto falls within exclusive legislation of congress, and the state jurisdiction is completely ousted." [Italics added.]

   As late as 1930, it was stated in **Surplus Trading Co. v. Cook**, 281 U.S. 647 (p.652), that:

"It has long been settled where lands fore such purpose [one of those mentioned in Clause 17] are purchased by the United States with the consent of the state legislature "the jurisdiction theretofore residing in the States passes," in virtue of the constitution provision, "to the United States," thereby making the jurisdiction of the latter the sole jurisdiction."[Italics added.]

   The italicized portions of the quoted excerpts suggest that Article I, Section 8, Clause 17, of the Constitution, may be self-executing where the conditions specified in that clause for the, transfer of jurisdiction have been satisfied.

   In **Mason Co. v. Tax Comm'n**, 302 U.S. 186 (1937), however, the Supreme Court clearly extended the acceptance doctrine, first applied to transfers of legislative jurisdiction by State cession statutes in **Fort Leavenworth R.R. v. Lowe**, **supra**, to transfers pursuant to Article I, Section, 8, Clause 17, of the constitution. The court said (p.207):

16. Judicial Notice - Rule 201(d)

"Even if it were assumed that the state statute should be construed to apply to the federal acquisitions here involved, we should still be met by the contention of the Government, that it was not compelled to accept, and has not accepted, a transfer of exclusive jurisdiction. As such a transfer rests upon a grant by the State, through consent or cession, it follows, in accordance with familiar principles applicable to grants, that the grant may be accepted or declined. Acceptance may be presumed in the absence of evidence of a contrary intent, but we know of no constitutional principle which compels acceptance by the United States of an exclusive jurisdiction contrary to its own conception of its interests."***

**What constitutes dissent.** -- Only in a few instances have the courts indicated what may constitute a "dissent" ( see, **Fort Leavenworth R.R. v. Lowe**, supra) by the Federal Government from a State's proffer of legislative jurisdiction. In **Mason Co. v. Tax Comm'n**, supra, the court concluded that a validation by Congress of contracts entered into by Federal administrative officials granting to State, officials certain authority with respect to schools, police protection, etc., reflected a Congressional intent not to accept the legislative jurisdiction offered to the Federal Government by the State by the latter's enactment of a consent statute. In a State case (**International Business Machines Corporation v. Ott**, 230 La. 666, 89 So.2d 193 (1956)), use by Federal installation of similar States services, with no indication of Congressional knowledge in the latter, was held to have negative Federal acceptance of jurisdiction proffered under a general consent and cession statute of the State. It may be noted that extension of this decision would put in doubt the status of many, if not most, Federal areas now considered to be under the legislative jurisdiction of the United States. In **Atkinson v. State Tax Commission**, 303 U.S. 20 (1933), the court indicated that the enforcement of the Oregon workmen's compensation law in Federal areas was incompatible with exclusive Federal legislative jurisdiction, and, since the Federal Government did not seek to prevent the enforcement of this law, the presumption of Federal acceptance of legislative jurisdiction was effectively rebutted.

17. Judicial Notice – Rule 201(d)

## CRIMINAL JURISDICTION

**Right of Defining and Punishing For Crimes: <u>Exclusive Federal Jurisdiction</u>.** --

Areas over which the Federal Government has acquired exclusive legislative

jurisdiction are subject to the exclusive criminal jurisdiction of the United

States. **<u>Bowen v. Johnston</u>**, 306 U.S. 19 (1939), **<u>United States v. Watkins</u>**, 22 F.2d

437 (N.D. Cal., 1927). That the States can neither define nor punish for crimes

in such areas is made clear in the case of **<u>In re Ladd</u>,** 74 Fed. 31 (C.C.N.D.,Neb.,

1896),(p.40):

> ***"The cession of jurisdiction over a given territory takes the latter from
> within, and places it without, the jurisdiction of the ceding sovereignty. After
> a state has parted with its political jurisdiction over a given tract of land, it
> cannot be said that acts done thereon are against the peace and dignity of the
> state, or are violations of its laws; and the state certainly cannot claim
> jurisdiction criminally by reason of acts done at places beyond, or not within,
> its territorial jurisdiction, unless by treaty or statute it may have retained
> jurisdiction over its own citizens, and even then the jurisdiction is only over
> the person as a citizen."***

The criminal jurisdiction of the Federalized Government extends to private

lands over which legislative jurisdiction has been vested in the Government, as

well, as to federally owned lands. **<u>United States v. Unzeuta</u>**, **supra**, see also

**<u>Peterson v. United States</u>**, 191 F.2d 154 (C.A. 9, 1951), sert denied 342 U.S. 885.

Indeed, the Federal Government's power derived from exclusive legislative

jurisdiction over an area may extend beyond the boundaries of the area, as may be

necessary to make exercise of the Government jurisdiction affective; thus, the

Federal Government may punish a person not in exclusive jurisdiction are for

concealment of his knowledge concerning the commission of a felony within the area.

**<u>Cohens v. Virginia</u>**, 6 Wheat. 264, 426-429 (1821). In **<u>Hollister v. United States</u>**,

145 Fed. 773 (C.A.8, 1906) the court said (p.777):

> "Instances of relinquishment and acceptance of criminal jurisdiction by state
> Legislatures and the national Congress, respectively, over forts, arsenals, public
> buildings, and other property of the United States situated within the states, are
> common, and their legality has never, so far as we know, been questioned."

18. Judicial Notice - Rule 201(d)

On the other hand, while the Federal Government has power under various provisions of the Constitution to define, and prohibit as criminal, certain acts or omissions occurring anywhere in the United States, it has no power to punish for various other crimes, jurisdiction over which is retained by States under our Federal-State system of government, <u>unless such crimes occur in areas as to which legislative jurisdiction has been vested in the Federal Government</u>. The absence of jurisdiction in a State, or in the Federal Government, over a criminal act occurring in an area as to which only the other of these governments has legislative jurisdiction is demonstrated by the case of **United States v. Tully**, 140 Fed. 899 (C.C.D.Mont., 1905). **Tully** had been convicted by a State court in Montana of first degree murder, and sentenced to be hanged. The Supreme Court of the State reversed the conviction on the ground that the homicide had occurred on a military reservation over which exclusive jurisdiction was vested in the Federal Government. The defendant was promptly indicted in the Federal court, but went free as the result of a finding that the Federal Government did not, have legislative jurisdiction over the particular land on which the homicide had occurred. The Federal court said (**Id. p.905**):

"It is unfortunate that a murder should go unwhipped of justice, but it would be yet more unfortunate if any court should assume to try one charged with a crime without jurisdiction over the offense. In this case, in the light of the verdict of the jury in the state court, we may assure that justice would be done the defendant were he tried and convicted by any court and executed pursuant to its judgment. But in this court it would be the justice of the vigilance committee wholly without the pale of the law. The fact that the defendant is to be dischrged may furnish a text for the thoughtless or uninformed to say that a murder has been turned loose upon a technicality; but this is not a technicality. It goes to the very right to sit in judgment."***

These sentiments no doubt appealed with equal force to the Supreme Court of Montana, and it is to its credit that it refused to lend its aid to the execution of one for the commission of an act which, in its judgement, was not cognizable under the laws of its state; but I cannot bring myself to the conclusion reached by that able court, and it is upon the judgment and conscience of this court that the matter of jurisdiction here must be decided.

19. Judicial Notice - Rule 201(d)

The United States and each State are in many respects separate sovereigns, and ordinarily one cannot enforce the laws of the other.

State and local police have no authority to enter an exclusive Federal area to make investigations, or arrests, for crimes committed within such areas since Federal, not State offenses are involved. Only Federal law enforcement officials, such as representatives of the Federal Bureau of Investigation and United States marshals and their deputies, would be authorized to investigate such offenses and make arrests in connection with them. The policing of Federal exclusive jurisdiction areas must be accomplished by Federal personnel, and an offer of a municipality to police a portion of a road on such an area could not be accepted by the Federal official in charge of the area, as police protection by a municipality to such an area would be inconsistent with Federal exclusive jurisdiction.

**Concurrent Federal and State criminal jurisdiction.** -- There are, of course, Federal areas as to which a State, in ceding legislative jurisdiction to the United States, has reserved some measure of jurisdiction, including criminal jurisdiction, concurrently to itself. In general, where a crime has been committed in an area over which the United States and State have concurrent criminal jurisdiction, both governments may try the accused without violating the double jeopardy clause of the Fifth Amendment. **Grafton v. United States**, 206 U.S. 333 (1907), held that the same acts constituting a crime cannot, after a defendant's acquittal or conviction in a court of competent jurisdiction of the Federal Government, be made the basis of a second trial of the defendant for a crime in the same or in another court, civil or military, of the same government. However, where the same act is a crime under both State and Federal Law, the defendant may be punished under each of them. **Herbert v. Louisiana**, 272 U.S. 377 (1922).(p.382):

20. Judicial Notice - Rule 201(d)

"It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the Federal Government, **Barron v. Baltimore**, 7 Pet. 243, and the double jeopardy therein forbidden is a second prosecution under authority of the Federal Government after a first trial for the same offense under the same authority..."

It is well settled, of course, that were two tribunals have concurrent jurisdiction that which first takes cognizance of a matter has the right, in general, to retain it to a conclusion, to the exclusion of the other. The rule seems well state din **Mail v. Maxwell**, 107 Ill, 554 (1883),(p.561):

"Where one court has acquired jurisdiction, no other court, State or Federal, will, in the absence of supervising or appellate jurisdiction, interfere, unless in pursuance of some statute, State or Federal, providing for such interference."

Other courts have held similarly. There appears to be some doubt concerning the status of a court-martial as a court, within the meaning of the Judicial Code, however, Law enforcement on areas of exclusive or concurrent jurisdiction. -- The General Services Administration is authorized by statute to appoint its uniformed guards as special policemen, with the same powers as sheriff's and constables to enforce Federal laws enacted for the protection of persons and property, and to prevent breaches of the peace, to supress affrays or unlawful assemblies, and to enforce rules made by General Services Administration for properties under its jurisdiction; but the policing powers of such special policemen are restricted to Federal property over which the United States has acquired exclusive or concurrent jurisdiction. Upon the application of the head of any Federal department or agency having property of the United States under its administration or control and over which the United States has exclusive or concurrent jurisdiction, the General Services Administration is authorized by statute to detail any such special policeman for the protection of such property and, if it is deemed desirable, to extend to such property the applicability of regulations governing property promulgated by the General Services Administration. The General Services Administration is authorized by the same statute to utilize the facilities of

21. Judicial Notice - Rule 201(d)

existing Federal law-enforcement agencies, and, with the consent of any State or local agency, the facilities and services of such State or local law enforcement agencies.

Although the Department of Interior required protection for an installation housing important information secret work, the General Services Administration was without authority to place unformed guards on the premises in the absence in the United States of exclusive or concurrent jurisdiction over the property, and notwithstanding the impropriety of permitting the policing of the property by local officials, if they were willing, without necessary security clearances.

Civilian Federal employees may be assigned to guard duty on Federal installations, but there is no Federal statute (other than that appertaining to General Services Administration and three statutes of even less effect **16 U.S.C. 559 (Forest Service), and 16 U.S.C. 10 and 10a (National Park Service)** conferring any special authority on such guards. They are not peace officers with the usual powers of arrest and have no greater powers of arrest than private citizens. As citizens, they may protect their own lives and property and the safety of others, and as agents of the Government they have a special right to protect the property of the Government. For both these purposes they may use reasonable force, 'and for the latter purpose they may bear arms irrespective of State law against bearing arms. Such guards unless appointed as deputy sheriffs (where the State has at least concurrent criminal jurisdiction), or deputy marshals (where the United States has at least concurrent criminal jurisdiction), have no ore authority than other private individuals so far as making arrest is concerned.

State and local officers may, by Federal special statute, preserve the peace and make arrests for crimes under the laws of States, upon immigrant stations, and

22. Judicial Notice - Rule 201(d)

the jurisdiction of such officers and of State and local courts has been extended to such stations for the purposes of the statute.

**Partial Jurisdiction. --** In some instances States granting to the Federal Government a measure of exclusive legislative jurisdiction over an area have reserved the right to exercise, only by themselves, or concurrently by themselves as well as by the Federal Government, criminal jurisdiction over the area. In instances of complete State retention of criminal jurisdiction, whether with respect to all matters or with respect to a specified category of matters, the rights of the States, of the United States, and of any defendants, with respect to crimes as to which State jurisdiction is so retained are as indicated in this chapter for areas as to which the Federal Government has no criminal jurisdiction. In instances of concurrent State and Federal criminal jurisdiction with respect to any matters, the rights of all parties are, of course, determined with respect to such matters according to the rules of law, generally applicable in areas of concurrent jurisdiction. Accordingly, there is no body of law specially applicable to criminal activities in areas under the partial legislative jurisdiction of the United States.

**State criminal jurisdiction. --** State criminal jurisdiction extends into areas owned or occupied by the Federal Government, but as to which the Government has not acquired exclusive legislative jursidiction with respect to crimes. And as to many areas owned by the Federal Government for its various purposes, it has not acquired legislative jurisdiction. The Forest Service of the Department of Agriculture, for example, in accordance with a provision of Federal law (16 U.S.C. 480), has not accepted the jurisdiction proffered by the statutes of many States, and the vast majority of Federal lands are held by the Federal Government in a proprietorial status only.

23. Judicial Notice - Rule 201(d)

The Federal Government may not prosecute for ordinary crimes committed in such areas. Federal civilians who may be appointed as guards in the areas do not have police powers, but possess only the powers of arrest normally had by any citizen unless they receive appointments as State or local police officers.

The foregoing present several questions concerning the purported jurisdiction of the court in the above styled action. Some of which are:

1. Did the federal government <u>ever</u> obtain jurisdiction over the geographical areas described in the governments charging instruments as being the Locus in Quo whereon the purportedly prohibited acts of the undersigned took place?

   a. If so, when?

   b. If so, to what extent?

2. Are the governments charging instruments defective on their face where they fail to establish on their face or at any subsequent juncture therein, that the locus in quo was within the legislative, territorial or admiralty jurisdiction of the federal United States?

   a. Was the Grand Jury informed that the locus in quo, as described by the government, was not within the legislative, territorial or admiralty jurisdiction of the United States?

   b. Did the United States district court commit reversible error where it failed to render a legal determination on the record as to whether or not the Court had jurisdiction to entertain the cause.

3. Did the federal government establish on the record, that it had Subject Matter jurisdiction over the alleged prohibited act(s), where the government failed to charge the undersigned with an alleged violation of the federal "Interstate Commerce" clause?

   a. Did the federal government inform the Grand Jury that the sine qua non to the legitimate application of the enumerated subsections of the Controlled Substance Act is Commerce?

   b. Did the United States district court error where it failed to notice the missing element in the charged offense, and failed to render a legal determination as to the obvious defect?

24. Judicial Notice — Rule 201(d)

## FACTS AND FINDINGS OF LAW
## IN THE NATURE OF RULE 201(d)
## OF THE FEDERAL RULES
## OF EVIDENCE

### FACT AND FINDING:

Fact, a thing done; and action performed or an incident transpiring, an event or circumstance; and actual occurrence.

### (SPECIAL) FINDING:

Is a specific setting forth the ultimate facts established by the evidence and which are determinative of the judgement which must be given. It is only a determination of the ultimate facts on which the law must be determined. A special finding may also be said to be one limited to the fact issue submitted.

### ULTIMATE FACTS:

One that is essential to the right of action or matter of defense, and the trial court is under the duty of submitting only or controlling issues.

1. **Title 42 U.S.C.S. 1986:** "Action for neglect to prevent," Every person who having knowledge that any of the wrongs conspired to be done, and mentioned in Section 42 U.S.C.S. 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or persons legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on case; and any number or persons guilty of such wrongful neglect or refusal may be joined as defendants in action. (42 U.S.C.S. 1986 is derivative of 1985 and provides remedy for persons injured by neglect or refusal of those having power to do so to prevent wrongs specified in 1985)

25. Judicial Notice – Rule 201(d)

2. **Title 28 U.S.C.S. § 453:** Each justice or judge of the United States shall take the following oath affirmation before performing the duties of his office: "I,_____, do solemnly swear (or affirm) that I will administer justice without, respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as _____, under the Constitution and the laws of the United States so help me God." (Note: It does not say "United States of America").

3. **7th Amendment:** In Suits at common law, where the value in controversy shall exceed twenty dollars, the right to trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

4. **Title 18 U.S.C.S. § 1621:** "Perjury"
Whoever:

(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States. See: 18 U.S.C. §1622, §1623 and §1001.

26. Judicial Notice - Rule 201(d)

5. **"Perjury of Oath of Office"**: Perjury; Inforjudgemental law, the willful assertion as to a matter of fact, opinion, belief or knowledge, made by a witness in a judicial proceeding as part of his or her evidence, either upon oath or in any form allowed by law to be substituted for an oath or in any form allowed by law to be substituted for an oath, whether such evidence is given in open court, or <u>in an affidavit</u>, or otherwise, such assertion being material to the issue or point of inquiry and known to such witness to be false. Perjury is a crime committed when a lawful oath is administered, in some judicial proceeding, to a person who swear willfully, absolutely, and falsely, in matters material to the issue or point in question. (Reference **Gatewood v. State**, 15 MD. App. 314, 290 A.2d 551,553; F.R.C.P. Rule 9(b), 12(d)(1),(2),(7); Title 42 U.S.C. 1986, 1985, 1983 Note 349, 14th Amendment U.S. Constitution).

6. **F.R.C.P. Rule 56(e)**: Form of Affidavits; Further Testimony; Defense Required. Supporting and <u>opposing affidavits shall be made on personal knowledge</u>, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the Affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto and served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

27. Judicial Notice – Rule 201(d)

7. **Stare Decisis:** Policy of Courts to stand by precedent and not to disturb settled point. **Neff v. George**, 364 Ill. 306, 4 N.E.2d 388, 390,391. Doctrine that, when a court has once laid down a principle of law as applicable to a certain state of facts; regardless of whether parties and property are the same. **Horne v. Moody Tex. Civ.**, App., 146 S.W.2d 505, 509, 510. Under doctrine a deliberate or solemn decision of court made after argument on question of law fairly arising in the case, and necessary to its determination, **is an authority or binding precedent in the same court** or in other courts of equal or lower rank in subsequent cases where the very point is again in controversy. **State v. Mellenberger**, 163 Or. 233, 95 P.2d 709, 719, 720. **Black's Law Dictionary 5th Edition pg.1261** (Further reference: Defendant's knowledge of wrongful acts is statutory prerequisite to suit under 42 U.S.C. 1986). **Buck v. Board of Elections**, 536 F.2d 522 (1976). Prior, unreviewed state administrative adjudication may have no preclusive effect on claims subsequently asserted under 42 U.S.C.S. 1981, 1983, 1985, 1986, 1988. **Elliot v. University of Tennessee**, 766 F.2d 982 (CA6 Tenn, 1985), 38 BNA FEP Cas 522, 37 CCH EPD 25419, cert. gr. 474 U.S. 1004, 88 L.Ed.2d 455, 106 S.Ct. 522 and affd. in part and revd in part on other grounds 478 U.S. 788, 92 L.Ed.2d 635, 106 S.Ct. 3220, 41 BNA FEP Cas 177, 40 CCH EPD 36205.

8. **F.R.C.P. 12(b)(6):** Rule 12 is Defenses and Objections; Rule 12(b) states with particularity, **How presented.** Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion. Section 12(b)(6): failure to state a claim upon which relief can be granted.

28. Judicial Notice – Rule 201(d)

9. **F.R.C.P. 12(b)(2):** Rule 12 is Defenses and Objections; Rule 12(b) states with particularity. **How presented.** Every defense in law or fact, to a claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: 12(b)(2): lack of jurisdiction over the person. (Refer F.R.C.P. 12(b)(7): Failure to join a party under Rule 19.)(F.R.C.P. Rule 19(b)).

10. **F.R.C.P. 12(b)(1):** Rule 12 is Defense and Objections; Rule 12(b) states with particularity. **How presented.** Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: 12(b)(1): lack of jurisdiction over the subject matter. (Refer Note 7).

11. **F.R.C.P. 12(b)(7):** Rule 12 is Defense and Objections; Rule 12(b) states with parttgicularity. **How presented.** Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counter claim, cross claim, or third party claim shall be asserted in the responsive pleading thereto if one is required, except that he following defenses may at the option of the pleader be made by motion: 12(b)(7): Failure to join a party under Rule 19(3)).

12. **14 Amendment (Sec. 1):** No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protections of the laws.

29. Judicial Notice – Rule 201(d)

13. **Title 18 U.S.C.A. Section 872:** Extortion by officers or employees of the United States. Whoever, being an officer, or employee of the United States or any department or agency, thereof, or representing himself to be or assuming to act as such, under color or pretense of office or employment commits or attempts an act of extortion, shall be fined under this title or imprisoned not more than three years, or both; but if the amount so extorted or demanded does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both. (As amended Oct. 31, 1951, ch 655, §24(b), 65 Stat. 720; Sept 13, 1994, P.L. 103-322, Title XXXIII, §330016(1)(G),(K), 108 Stat. 2147; Oct. 11, 1996, P.L. 104-294, Title VI, §606(a), 110 Stat. 3511.)

14. **1st. Amendment:** Freedom of speech, press, and to petition for a redress of grievances. **5th. Amendment:** No person shall be deprived of life, liberty, or property without due process of law. **6th. Amendment:** Right to a speedy and public trial, by an impartial jury of the state and district wherein the crimes shall have been committed, and informed of the nature and cause of the accusation. **7th. Amendment:** In suits of common law, where the value in controversy shall exceed twenty dollars, the right to jury by trial shall be preserved, and no fact tried except by jury.

15. **Title 18 U.S.C.A. Section 242:** Provides in pertinent part; "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States...shall be fined not more than $1,000 or imprisoned not more than one year, or both." Question was not whether state law had been violated but whether inhabitant had been deprived of federal right by one who acted under color of any law. **Screws v. United States**, 325 U.S. 91, 89 L.Ed 1495, 65 S.Ct. 1031, 162 ALR 1330, (1945).

30. Judicial Notice - Rule 201(d)

16. **Title 42 U.S.C.A. Section 1985(2): Obstructing justice; intimidating party, witness, or juror.** If two ore more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from "attending such court, or from testifying to any matter pending" therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impending, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

**Discrimination:** A failure to treat all persons equally where no reasonable distinction can be found between those favored and those not favored. Ref. **Baker v. Cal. Land Title Co.**, 349 F.Supp 235, 238, 239 (D.C.Cal. 1972). Title VII of the Civil Rights Bill of 1964.

17. **Title 18 U.S.C.A. Section 241. Conspiracy against rights.** "If two or more persons conspire to injure, oppress, threaten, or intimidate any inhabitant of any State, Territory, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

"If two ore more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured;"

31. Judicial Notice - Rule 201(d)

They shall be fined not more than $10,000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life.

18. **Title 42 U.S.C.A. Section 1983. Civil action for deprivation of rights.** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..

19. **4th Amendment. Unreasonable searches and seizures.** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and No warrants shall issue, but upon probable cause, supported by "Oath or affirmation," and particularly describing the place to be searched, and the persons or things to be seized.

20. Although city is not "person" amenable to action under 42 U.S.C. 1986, city officials acting in their official capacities are subject to action under this section. **Black Bros. Combined Inc. v. Richmond**, 386 F.Supp 147 (ED Va. 1974), 12 BNA FEP Cas 432, 10 CCH EPD 10267. If city or other municipal corporation had policy or custom of refusing or neglecting to prevent violations of 42 U..S.C.S. 1985, and city's agents, servants, and employees followed that policy or custom, then city could be held liable under 42 U.S.C.S. 1986. **Vasquez v. Reno**, 461 F.Supp 1098 (DC Nev 1978), 21 BNA FEP Cas 1281, 19 CCH EPD 9091. Municipality is directly liable under 42 U.S.C.S. 1985(2),(3), and 1986 only where it is shown that deprivation or rights was pursuant to policy statement, ordinance, regulation, a

32. Judicial Notice – Rule 201(d)

decision of an official adopted and promulgated, or custom usage. **Bell v. Milwaukee**, 536 F.Supp 462 (ED Wis. 1982), affd. in part and revd. in part on other grounds, 746 F.2d 1205 (CA 7 Wis. 1984). (Further reference: 41 ALR.3d 700, Personal liability of policeman, sheriff, or similar peace officer or his bond for injury suffered as a result of failure to enforce law or arrest lawbraker.)

21. **Color of Law:** The appearance or semblance without the substance, of legal right. **State v. Brechler**, 185 Wis. 599, 202 N.W. 144, 148 (Reference Blacks Law Dictionary 4th Edition, pg. 331.

22. **Ratification:** In a broad sense, the confirmation of a previous act done either by the party himself or by another; as, confirmation of a voidable act. **Story** ag. subsection 250, 251; 2 Kent, Comm. 237; **Norton v. Shelby County**, 6 S.Ct. 1121, 118 U.S. 435, 30 L.Ed. 178, **Gallup v. Fox,** 30 A. 756, 64 Conn. 491. In the law of principal and agent, the adoption and confirmation by one person with knowledge of all material fact, of an act or contract performed or entered into, in, his behalf by another who at the time assumed without authority to act as his agent. **Maryland Casualty Co. v. First State Bank of Delaware**, 101 Okl. 71, 223P. 701, 705. (Ref. Blacks Law Dictionary 4th Edition, pg. 1428).

23. **Stipulation:** A material article in agreement. (Ref. Blacks Law Dictionary 4th Edition, pg. 1586).

24. **F.R.C.P. Rule 11: Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions. 11(b):** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,- **11(b)(2):** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous

33. Judicial Notice - Rule 201(d)

argument for the extension, modification, or reversal of existing law or the establishment of new law.

25. **Fiduciary:** A person having a duty, created by an undertaking, to act primarily for another benefit in matters connected with such undertaking. (Ref. Blacks Law Dictionary 5th Edition p.563).

Malice in law is not necessarily personal hate or ill will, but is that state of mind which is reckless of the law and of the legal rights of the citizen. (Ref. **Chrisman v. Terminal R. Ass'n of St. Louis**, 237 Mo. APP. 181, 157 S.W.2d 230, 235.

26. **Fraud:** An intentional perversion of truth, for the purpose of inducing another in reliance upon it in part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegation, or by concealment of that which should have been disclosed, which devices and is intended to deceive another so that he shall act upon it to his legal injury.   **Brainerd    Dispatch Newspaper Co. v. Crow Wing County**, 196 Minn 194, 264 N.W. 779, 780. any kind of artifice employed by one person to deceive another. **Goldstein v. Equitable Life Assur. Soc. of U.S.**, 160 Misc. 364, 289 N.Y.S. 1064, 1067. A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated. **Johnson v. McDonald**, 170 Okl. 117, 39 P.2d 150. "Bad Faith" and "Fraud" are synonymous and also synonymous of dishonesty, infidelity, faithlessness, perfidy, unfairness, etc. **Joiner v. Joiner**, Tex. Civ. App., 87 S.W.2d 903, 914, 915. (Ref. Blacks Law Dictionary 4th Edition. 788, 789)

34. Judicial Notice - Rule 201(d)

**Note:**

Because everyone is deemed to know the law, inaccurate representations regarding legal matters are not generally actionable. Of course, were one to make a representation regarding a matter of law that the misrepresenter himself knew to be inaccurate, a "Fraud" action would lie. (Ref. **White v. Mulvania**, 575 S.W.2d 184 (Mo.1978)(party's "superior" knowledge of the law [held to be an exception from general rule that a misrepresentation of law is not actionable.] (see Note 1 Fact and Finding Sheet).

Whereby, the government's cause against the Petitioner is premised upon an unlawful application of Law, viz:

1. Lack of subject matter jurisdiction;

2. Lack of jurisdiction over defendant, a citizen party;

3. No Fourth Amendment Search Warrant;

4. Unlawful indictment;

5. wrongful application of U.S. Codes;

6. Lack of Published regulations in the Federal Register;

7. Failing to give notice under due process and denial of due process;

8. Usurpation of power not delegated or legislated;

9. Unauthorized Prosecution under Admiralty/Maritime Law;

10. And the denial of the effective assistance of counsel.

35. Judicial Notice - Rule 201(d)

## CONCLUSION

In the **Nature of Rule 201(d),** of the Federal Rules of Evidence, the Court is **compelled** to take **Judicial Notice** of the foregoing, where it is shown that the legislative jurisdiction of the Federal Government is strictly limited and defined. The Federal Government has no Constitutional or Congressional authority to restrict or compel the activities of private citizens, domiciled without the legislative, territorial or admiralty jurisdiction of the federal United States. The jurisdiction of the Court is limited by and does not exceed that of the Federal Government. Where the instant matter is concerned, neither the federal government or the district court have established, on the record, documented proof that the alleged prohibitive conduct of the undersigned was committed within the jurisdiction of the federal United States or that such alleged prohibitive conduct violated a provision of the Federal Interstate Commerce Clause.

**WHEREFORE,** the undersigned respectfully prays that the Court will take **Judicial Notice** of the foregoing and find as a matter of Law and Fact that the federal government lacked both, legislative and subject matter jurisdiction.

Dated this **19** day of **Nov** , 2007.         Respectfully Submitted

*Oziel Martinez*
_____
Oziel Martinez, Petitioner - Pro se.

Cert Mail No. 7005 1160 0000 4617 7591

36. Judicial Notice - Rule 201(d)